## WALSH *vs.* THE CITY COUNCIL OF AUGUSTA.

1. Construing article VII, section VII, paragraph I of the constitution of 1877 as a whole, and in the light of other sections *in pari materia* it limited the increase of indebtedness beyond seven per cent on the value of taxable property as well in cases of cities which had already reached that limit as of those which had not done so. In the former case, debts beyond that limit could not be annulled, but further increase could be restrained; in the latter case, a limit could be put upon debts to be created in future.

(*a.*) The cardinal rule for construing remedial laws, whether statutory or constitutional, is to have regard to the old law, the mischief and the remedy.

2. So construed, and in the light of kindred sections, the effect of article VII, section VII, paragraph I, of the constitution of 1877, is as follows: The debt of no city or town, under existing laws or charters, can exceed seven per cent on the taxable property therein; no new debt up to that limit can be created without a vote of two-thirds of the qualified voters thereof, and without provision being made by taxation for the payment of principal and interest, and if a bonded debt, without provision for such payment within thirty years; no municipality whose debt when the constitution was adopted exceeded seven per cent. on taxable property can incur more debt (certainly not till the old debt is paid or reduced); but one whose debt was not in excess of seven per cent may, under a special act, and by a vote of two-thirds of its voters, increase its debt

to ten per cent, provision being made for payment; none can go beyond that limit.

(*a*.) The exception "in this constitution provided for," probably referred to the common school system, certainly not to the improvement of drainage and increase of water supply.

3. The constitution as enrolled, published and ratified by the people, is the organic law of this state. If verbal changes were made in it after it was reported by the committee of revision, they must be presumed to have been authorized by the convention, the published proceedings showing that verbal changes were made of which no special note was taken.

4. The value of property owned by a city outside of the taxable property of her citizens cannot be deducted from its aggregate indebtedness so as to reduce the amount thereof in applying the constitutional limit on its debts.

Municipal Corporations. Constitutional Law. Tax. Debtor and Creditor. Before Judge SNEAD. Richmond County. At Chambers. September 17th, 1881.

Walsh, an owner of real estate and a tax-payer, filed his bill against the city council of Augusta to enjoin the issuing of $400,000.00 of bonds which they purposed to issue. The bill alleged, in brief, as follows: At the time of the adoption of the constitution of 1877, the taxable property in the city of Augusta was $14,907,513.00, and its bonded debt was $2,070,000.00, and this ratio has not materially changed since. The board of health condemned the system of sewerage, drainage and water supply, and recommended action in regard thereto for sanitary reasons. In July, 1881, the council submitted to a popular vote, the question of incurring the necessary debt; eight hundred and ninety-seven votes were cast, six hundred and forty-three being in favor of the debt, two hundred and fifty-three against it, and one blank. Thereupon the council were proceeding to issue the bonds when this bill was filed. It charged that the debt could not be constitutionally incurred, and that the necessary two-thirds of the qualified voters of the city did not vote for the measure, the tally sheet at the last general election

showing the number of voters in the city to be 1,163.
Injunction was prayed.

The answer denied none of the material facts stated above, except that the necessary majority was not had at the election; it alleged that a full and fair opportunity to vote was given.   It admitted that at the time of the adoption of the constitution of 1877 the bonded debt was $2,034,009.00 and the taxable property less than $15,000,-000.00, and that this ratio had not been materially altered. It set up certain deductions to be made from the indebtedness on account of redeemed bonds and cash on hand; it also set up that the city owned property subject to levy and sale outside of that essential for municipal purposes, amounting in value to $2,366,000.00, and that at the date of the adoption of the constitution such property amounted to $1,867,500.00 in value.   This it claimed as a reduction in making a statement of its debts.   Defendants also denied the right of complainant to go behind the election, the action of the board of health and of council in determining the pre-requisites for the issuing of bonds; and set up that since the constitution of 1877 the city of Augusta had not incurred any new debt which increased its debt since that time to seven per cent of the assessed value of taxable property therein.

The chancellor refused an injunction, and complainant excepted.

In argument in the supreme court it was urged that a change had been made in article VII, section VII, paragraph I of the constitution of 1877, between the time of its adoption as a paragraph and the adoption of the constitution as a whole, in this: that when adopted as a paragraph it read,   * * *   "but any city, the debt of which, shall exceed seven per centum," etc., while the constitution as published, says, "but any city, the debt of which does not exceed," etc.

W. W. MONTGOMERY; S. F. WEBB; M. P. CARROLL, for plaintiff in error.

H. Clay Foster; Frank H. Miller; J. S. & W. T. Davidson, for defendants.

Jackson, Chief Justice.

1, 2. The controlling question made by this record involves the construction of the first paragraph of the seventh section of the seventh article of the constitution, which is in the following words:

"The debt hereafter incurred by any county, municipal corporation or political division of this state, except as in this constitution provided for, shall never exceed seven per centum of the assessed value of all the taxable property therein, and no such county, municipality or division shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one-fifth of one per centum of the assessed value of taxable property therein, without the assent of two-thirds of the qualified voters thereof, at an election for that purpose, to be held as may be prescribed by law; but any city, the debt of which does not exceed seven per centum of the assessed value of the property at the time of the adoption of this constitution, may be authorized by law to increase, at any time, the amount of said debt three per centum upon such assessed valuation."

The city of Augusta is indebted some fourteen per centum upon her taxable property, and was so indebted at the time of the adoption of the constitution. On the recommendation of her board of health, an ordinance was passed providing for the issue of bonds to the amount of four hundred thousand dollars, to pay for a system of sewerage, drainage and water supply for the city, thus creating a new debt in addition to that already standing against her, which exceeds seven per centum upon the valuation of her taxable property. So that the question is, can she incur this new debt, in addition to what she now owes, without a violation of this paragraph of the constitution. It is conceded that she could not do so if her present indebtedness of more than seven per centum had been incurred subsequently to the adoption of the constitution, but it is argued that inasmuch as that debt

is an old debt, contracted prior to the date of the constitution, this new debt proposed to be levied is not within the prohibition of the constitution. In order to arrive at the true construction of all statute law, whether organic and fundamental, or legislative, the cardinal rule, if there be ambiguity in the words, is to consider the old law, the mischief or evil, and the remedy. The rule is taken by us trom the English law, and of course applies to fundamental or organic legislation ; for the acts of parliament in that country are supreme, and laws emanating from the legislature of England are fundamental. The rule has its application to statutes of all sorts, whether the ukase of absolutism, the fundamental utterances of the people assembled in convention to ordain a written constitution, the acts of a legislative assembly limited by that written constitution, or the ordinances of a municipality controlled by the limitations of the legislative power which gave it being, or the by-laws of an ordinary corporation, because the basis on which this universal rule of construction reposes is good sense and sound reason. Whosoever may be the law-maker, naturally he will examine the old law to see what evil existed therein, and he will frame the new enactment to guard against that evil for the future.

It is conceded by every one who reads this paragraph of the constitution of 1877 that the construction of it from its mere words is somewhat difficult. The difficulty arises from the use of the words, "the debt hereafter incurred " by any municipality "shall never exceed seven per centum of the assessed value of all the taxable property therein." "Hereafter incurred " would seem to fix the meaning as having reference to no debt at all theretofore incurred ; but the latter part of the paragraph expressly limits any city, whose debt, at the time of its adoption, does not exceed seven per centum, from incurring an additional debt of more than three per centum thereon, but enables it to do so by legislative grant of

power therefor, thereby by the strongest implication deny-
ing any city, whose debt did, at the time the constitution
was adopted, exceed seven per centum on its taxable
property, from increasing its debt at all, even though it
procured legislative authority to increase it.    And then
the middle of the paragraph throws additional trouble in
the way of a clear interpretation of the entire paragraph
by prohibiting any city from incurring any new debt at
all, except to the extent of one-fifth of one per centum,
and that limited to the single purpose of supplying " cas-
ual deficiencies of revenue," without the assent of two-
thirds of its qualified voters.    So that, construing the
whole paragraph together by the words used therein, the
meaning thereof is not as clear as it might have been
made.    To give it, therefore, a rational construction, we
must have recourse to the cardinal rule above recited.

What was the old law?  It was the constitution of 1868.
To revise that fundamental law, and ordain a new one,
wherein it was evil, is the purpose which the legislature
had in view when it called together the people in conven-
tion, in 1877.   That purpose appears on the face of the
legislative call.   Acts of 1877, p. 26.

When that body assembled, inasmuch as it represented
the people in their sovereign capacity, the legislative call
could not limit the sovereign's power, and the representa-
tives of the sovereign power made a new constitution,
revising and altering the old as they saw fit, submitting
their work to their constituents, the sovereign people,
who ratified the act of their representatives.

By the constitution of 1868, the taxing power of the
municipal governments of the state was limited only by
the legislative will of the state in general assembly con-
vened, (Cons. 1868, Art. 1, Sec. 28; Code, §5020;)
not repugnant of course to that constitution or the con-
stitution of the United States.   Art. III, Sec. V, Par.
1, Code, §5062.   And such will of the legislature became
repugnant to the constitution of 1868, when a citizen

Walsh *vs.* The City Council of Augusta.

against his will was made to contribute to any work of internal improvement unless sanctioned by the vote of a majority of the qualified voters of the city at an election held for that purpose.    Art. 3, Sec. 6, Par. 4, Code, §5067.

Beyond this restriction, there was no limit on the power of a municipality to tax her citizens or to incur debts if authorized to do so by the general assembly.    Such was the old organic law, the constitution of 1868.

What was the evil ?    It was the evil attendant upon all people who handle money not their own.    The cities of the state incurred a very heavy indebtedness—some of them became insolvent.    To levy taxes enough to pay them would work the ruin of the citizens and blight the prosperity of the city.    Not to levy and pay them would be to destroy credit and soil honor.    The cities are the arteries of the body politic.    With them destroyed or sluggish, the heart, the very life, of the republic would cease to beat or pulsate with a feeble supply of vital fluid. So that in their health is involved that of the entire commonwealth, and to suffer their honor to be tarnished is to soil that of the state.    Therefore, the strong language used by this court in 64 *Ga.*, 286 and 498, in respect to the evils resulting from this unlimited power to incur city indebtedness with only the slight check of the sanction of a majority of the voters, without regard to their property or intelligence, is sober though figurative—it is stern truth and no flight of fancy.    One of the largest cities of a sister state actually surrendered her franchises and ceased to be corporate, because of the extravagant debts her authorities had incurred, and her total inability to meet them; and one of our own was almost in the throes of death because of the burden under which she staggered.

To stop this tide of evil, which always swells in the calm of prosperity and peace rather than in the storm of adverse weather, when all eyes are watching the danger, the framers of the constitution of 1877 inserted this paragraph and the succeeding paragraph of this section; and

v 67—20

reading them in the light of the old constitution, the mischief and the remedy, we think the meaning will become apparent, despite the confusion which arises from the inaccurate use of words.

The framers of it could not extinguish past indebtedness of cities. The constitution of the United States prohibited their doing so, because the obligation of contracts would be destroyed. But they did everything else which they had power to do to stay this tide and keep Georgia above its flood. They prohibited all cities from making any new debt, unless sanctioned by two-thirds, instead of a majority, of the voters, except small loans to supply casual deficiencies of revenue, not to exceed one-fifth of one per centum upon the taxable property thereof. They, then, even with this sanction of two-thirds of the citizens to a new debt, required a provision for the payment of this debt by the assessment and collection of an annual tax sufficient to pay the principal and interest of the debt within thirty years. Par. 2, Sec. 7, Sup. to Code, §671.

Thus determined to preserve the honor and credit of the state by preserving that of her minor governments, the framers of the constitution of 1877 inserted these checks on new debts of cities. First, two-thirds must vote them, and secondly, preparation must be made by taxation to pay them, and the voter, when he deposits his ballot, must know that he puts no burden on posterity which he will not assume himself, but every year he must pay his quota for interest and a sinking fund for principal, to be levied and collected on his property.

Section 10 and paragraph 1 of article 7 is, if possible, still more explicit: " Municipal corporations shall not incur any debt until provision therefor shall have been made by the municipal government." Thus it emphasizes paragraph 2 of section 7 of the same article.

But the constitution does not stop with these checks upon the extravagance of cities and the proneness of

their authorities to incur debts and lay the burden on generations to come. Therefore the first paragraph of section 7 provides that "the debt hereafter incurred" shall never exceed seven per centum upon their taxable property, "except as in this constitution provided for," which exception possibly may have reference to the provisions in regard to the establishment of schools for elementary instruction, authorized in the second paragraph of the sixth section of article seven, and the first paragraph of the fourth section of article eight ; though those provisions apply to the power of taxation rather than that of incurring debts, or more probably to the latter part of the paragraph under consideration, which allows an increase of three per cent. to a certain class of cities under legislative authority and sanction.

Be that as it may, it is clear that debts incurred for such purposes as that for which this new debt of Augusta is proposed to be made, in addition to what she now owes, are not elsewhere provided for in the constitution, and therefore if the words "hereafter incurred" embrace the case of Augusta with the proposed increase of a debt of fourteen per centum, incurred prior to the date of the constitution, it would be repugnant to this paragraph.

For such a purpose as drainage, sewerage and water supply, no debt, incurred after the constitution of 1877 became operative, could exceed seven per centum on the taxable property of the city which proposed to make it, if she already owed more than seven per centum. But is this restriction limited to debts incurred after the adoption of the constitution of 1877? Is it probable—can it be possible—that the framers of that organic law intended to put no check at all on those cities which were already deeply in debt? Is it reasonable that whilst they put the check of seven per centum on taxable property as the heaviest debt a city should thereafter incur, though it owed nothing, they also meant to allow a city already burdened with fourteen per centum to add seven per

centum to fourteen, and thus to run up her indebtedness to twenty-one per centum, which is more than one-fifth of her taxable property? In a fundamental law designed to correct extravagance and constrain frugality, did the framers of that law intend to put past extravagance at a premium and past economy at a discount? Endeavoring to guard against the ruin of the whole body politic by restraining the most important limbs from paralysis, did they deliberately enact that limbs already diseased might inoculate themselves with still more of the virus which had well nigh produced palsy? It cannot be. Yet this incomprehensible policy was theirs, if cities heavily in debt were allowed to incur the full burden that any person, natural or artificial, can well carry, seven per centum on property, heaped upon a burden already double that weight. We must, therefore, study the provisions of the constitution in the light of the mischief and the remedy as well as in the light of its reason and spirit, to find a meaning more in accordance with wisdom, as well as justice and the evident policy of the convention.

Why were the words, "hereafter incurred" used, and what do they mean, then, in this paragraph? The framers could not enact that no city should owe more than seven per centum hereafter, because some of the cities owed more than that already. They could not obliterate past indebtedness, because to do so would have been to impair—nay to annihilate—the obligation of past contracts in the teeth of the supreme law of all our laws, the constitution of the United States. Hence they must of necessity use language which made it clear that they did not attempt to go counter to this great prohibition in the Federal constitution. They were engaged in a work which was to stand the test of time, and it must not be marred and blurred by any hint at the repudiation of honest debts. Therefore they used these words so as to convey the idea that debts of cities hereafter must not be greater than seven per centum on their taxable property, and at

the same time to convey the other idea that they had no thought to repudiate debts of the past, though in excess of that rate. That such was the intent of the framers in the use of these words; that they meant not to permit any city to go beyond that per centum under existing charters; that it was their purpose so to limit future indebtedness, and to apply the limitation to all debts of cities, old debts as well as new, so far as they had power to do so under the Federal compact, is apparent from the succeeding sentence of the same paragraph. That sentence, or part of a sentence, provides that "no such municipality shall incur any new debt," etc., thus making that word "new" tell that the former part of the sentence limiting the debt which cities could owe applied to old as well as to new debts; otherwise the word new is surplusage, because, leaving it out, if the words " hereafter incurred " applied alone to new debts, the meaning would be just as clear without the qualifying adjective " new."

Moreover that such is the use made of the words "hereafter incurred" in the beginning of the paragraph, is strengthened by the concluding clause. That clause is: " But any city, the debt of which does not exceed seven per centum of the assessed value of the property at the time of the adoption of this constitution, may be authorized by law to increase at any time the amount of said debt three per centum upon such assessed valuation." Thus showing most clearly that the constitution in this paragraph deals with past indebtedness, and puts a check upon its increase, if it has already reached beyond the maximum limited in the first part of the same paragraph. Because if it has not already exhausted that limit, by special act of the general assembly, passed at any time that body may deem it expedient to allow it, the city with an old debt of seven per centum or less, may increase the old debt three per centum; but if at the time of the adoption of the constitution any city has already past that margin, it must stop where it is, and even legislative dis-

cretion backed by a two-thirds vote of its people, is impotent to enable it to move further. If it be asked why should a city with seven per centum of indebtedness be authorized to go to ten, and one with eight per centum of indebtedness be restrained from going to the same point, the answer is that there must be some limit to the amount of debt which, already existing, may not be increased at all, and that limit is fixed at seven per centum—the same limit which is fixed at the beginning of the paragraph, and which is perhaps fixed at that rate because it is the rate of interest on money in this state, that is, seven per centum is the legal idea of the proper productive power of money or property. If it be asked again, why should a city with a less debt than seven per centum only be allowed to go three per centum more, the answer is, that while such may be the letter of the last clause, it is not the spirit of the paragraph construed all together, for by a vote of two-thirds of the people such a city may incur a debt up to seven per centum under its charter already granted, and having without a special law gone to that extent, it too may have a law passed, if deemed expedient by the general assembly, to go to the same limit of ten per centum, three per centum more. So that all cities owing more than seven per centum are put on that equality which is equity, and can contract no more debt until that is paid ; and all cities owing only seven per centum or less, are put on that equality, which is equity among this class too, and may by special act of the legislature increase the debt three per centum. Thus cities beyond a line of prudence in the management of their fiscal affairs, to-wit : the incurring a rate per cent of debt greater than the legal interest, are prohibited from incurring more until the old debt is paid or reduced ; penalty not premium is dealt out to them ; whilst cities which have kept within this line of prudential management of money may be trusted with a little more margin in the future, as a premium for good management in the past. So the state, like a wise parent, checks the children whose conduct shows they need it,

more than she does those whose behavior has been more seemly. She restrains all, for all need restraint; but in the degree of restraint she is governed by the character of her children as exhibited in their conduct.

In view of the whole paragraph and kindred sections of the constitution, we conclude that under this instrument the debt of no city or town in Georgia under existing laws or charters can exceed seven per centum; that no new debt up to that limit can be created without a vote of two-thirds of the qualified voters thereof, and without provision being made by taxation for the payment of principal and interest, and, if a bonded debt, without provision for such payment within thirty years; and that no municipality whose debt when the constitution was adopted exceeded seven per centum can incur more debt, but any municipality whose debt at that time was not in excess of seven per centum on its taxable property may, by special act, go up to ten per centum; and that none under any circumstances can be authorized by legislative law to go beyond that limit of ten per centum; and that in all cases, under existing laws and charters, or by special acts under the last clause of the paragraph we have mainly considered, a vote of two-thirds of the people, and a provision to pay the debt, must be had and made to give constitutional vitality to it. That the vote of two-thirds of the people would be necessary, after this special authority had been given for an increase up to three per centum, is apparent from the fact that the constitution of 1868 required a majority vote in all cases, and that of 1877 was designed to be more stringent, as the entire instrument shows.

3. We hold that the constitution, enrolled and published, and ratified by the people, is *the true* constitution of the state; and that any change of verbiage in it, after it was reported by the committee of revision, must be presumed to have been authorized by the convention, as the published proceedings show that verbal changes were made of which no special note was taken. Unless ratified, it

is not the constitution of Georgia, and that only which was submitted to vote has been ratified.

4. Property that the city of Augusta may own outside of the taxable property of her citizens cannot be invoked by subtracting its value to lessen the rate of her indebtedness in the meaning of this constitution, because that instrument itself fixes the per centum as "upon the assessed value of all the taxable property therein." Her assets, or indebtedness to her, cannot be deducted from the debt she owes, so as to make that per centum less. It is the debt she has incurred and the per centum of that debt on her taxable property with which alone the constitution deals.

No act of the general assembly can authorize an increase of her debt until reduced; nor can the system of sewerage, drainage and water supply, however much needed for enlarged enterprise, or even the health of the people, and however expedient, empower her city government to incur this debt, as she has exhausted her constitutional limit.

It is made our duty by the constitution to declare all acts repugnant to it void; and this act of that city being repugnant in our view to it, after labored thought and much deliberation, we are obliged to reverse the judgment of the chancellor, and to direct that the injunction prayed for be granted; and it is so ordered.

Judgment reversed.