DYER *et al. v.* ERWIN *et al.*, commissioners.

1. Where county commissioners invite proposals for the erection of a public building to cost $300.00 or more, and "the terms and time of payment" are not stated in the notice and advertisement, a contract made in accordance with a bid submitted under such defective notice and advertisement is illegal.
2. Without the preliminary sanction of a popular vote as required by the constitution, county commissioners have no authority to contract to have a court-house built on the credit of the county at a price in excess of the available funds on hand together with such taxes as may be lawfully levied for that purpose during the year the contract is made.

3. When necessary, county commissioners may levy an extra tax for having a court-house erected, and while they should be restrained from using the proceeds of such taxation in carrying out an unauthorized contract entered into by them, there should be no interference with the collection of the tax for the purpose of having a court-house built therewith under a contract to be made in pursuance of the provisions of sections 344 et seq. of the Political Code.

Argued December 5, 1898. — Reargued January 9, — Decided April 17, 1899.

Petition for injunction. Before Judge Kimsey. Union county. November 12, 1898.

*H. H. Perry* and *V. M. Waldroop*, for plaintiffs in error.
*W. E. Candler, W. A. Charters* and *J. W. H. Underwood*, contra.

FISH, J. . In June, 1898, Erwin et al., commissioners of roads and revenues of Union county, advertised for sealed proposals for the building of a court-house for that county. "The terms and time of payment" were not stated in the notice and advertisement for bids. The bid made by M. B. McGinty under such notice and advertisement was accepted by the commissioners, and on August 10, 1898, they entered into a contract with him, by the terms of which he was to build a court-house for the county for the sum of $11,590, payments to be made as the work progressed, upon estimates of architects, and final payment when the building should be completed, which should not be later than August 10, 1899. Soon after this contract was made, the commissioners had the old court-house torn down, as being unsafe. Afterwards the question of whether bonds for $12,000 should be issued by the county, to pay for building a new court-house, was submitted to the qualified voters of the county, at an election held for that purpose, and the result was against the issuance of bonds. Subsequently, on October 6, 1898, the commissioners levied an extra tax of two per cent. upon all the taxable property in the county, "for the purpose of building a new court-house." Dyer et al., citizens and taxpayers of the county, presented their petition to the circuit judge, asking that the commissioners be restrained from carrying out the contract with McGinty, from proceeding any further with the erection of the court-house, and from paying McGinty any of the public money on such contract, and

that the commissioners and Brockett, the tax-collector, be restrained from collecting the extra tax of two per cent. The petition alleged that the contract with McGinty was illegal, because the notice and advertisement for bids did not state "the terms and time of payment," and because the contract was an effort to create a debt against the county by the commissioners without the preliminary sanction of a popular vote as required by the constitution. The petition also alleged that there were no funds in the treasury of the county for building a court-house, or for any other purpose. The answer of the commissioners denied this, and alleged that there were "about $1,000" in the treasury, "some $400" of which they had appropriated to the payment of architects for plans, etc. Nothing more was submitted on this matter. The answer further alleged, that "the taxable property of said county is "about $535,000"; and that since the tearing down of the old building there has been no court-house in the county and no place where court could be held. The defendants prayed that if the extra tax could not be legally paid to McGinty, under the contract with him, they be allowed to use it in having a court-house built for the county. Upon the hearing, the material facts being as above stated, the judge refused to grant an interlocutory restraining order, and the petitioners excepted.

1. Sections 344, 345 and 346 of the Political Code, relating to contracts of counties for public buildings, etc., provide that the notice and advertisement for public bids or sealed proposals as therein prescribed, when the cost is to be $300 or more, shall embrace such details and specifications as will enable the public to know the extent and character of the work to be done, "and the terms and time of payment," and that it shall be unlawful for the county authorities to let out any contract for building any public building unless the provisions of these sections be complied with. It is evidently to the interest of the public that these statutory requirements should be strictly enforced. The advertisement in this case contained nothing whatever as to "the terms and time of payment," which were to become a part of the contract to be let out for the erection of the court-house, and it therefore follows that the contract made with Mc-

Ginty, in accordance with his bid or proposal submitted under such defective advertisement, must be declared illegal.

2. Under the contract with McGinty, the commissioners,. without the preliminary sanction of a popular vote as required by the constitution, sought to bind the county to pay him the sum of $11,590 for building a court-house. If the commissioners undertook by this contract to create a liability against. the county, which was to be discharged in whole or in part by the levy of a tax during any year subsequent to that within which the contract was executed, then the contract was an effort to create a debt, and was in violation of that requirement of the constitution above referred to, making the assent of two thirds of the qualified voters of a county a condition precedent to its incurring a debt. On the contrary, if the building was to be paid for out of available funds in the treasury of the county, or with taxes lawfully levied, or which could be lawfully levied during the year 1898, or partly with such funds and partly with such taxes, then the contract did not create a debt against the county within the meaning of the constitution, and was valid without such preliminary sanction of a popular vote. The law upon the subject is now well settled in this State. *Butts* v. *Little*, 68 *Ga.* 272; *Lewis* v. *Lofley*, 92 *Ga.* 804; *Commissioners of Habersham County* v. *Porter Mfg. Co.*, 103 *Ga.* 613; *City Council of Dawson* v. *Dawson Waterworks Co.*, ante, 696. In the last-named case, Mr. Justice Cobb delivered a very able and well-considered opinion, in which all the decisions of this court are reviewed, and some of them in part overruled. It appears from the record in the case under consideration, that an extra tax of two per cent. was levied by the commissioners of Union county, on October 6, 1898, to be collected during that year, for the purpose of building a new court-house, and that the total value of the taxable property in the county was only "about $535,000." This levy of two per cent. would therefore produce $10,700, which would be $890 less than the amount which was to be paid to McGinty under the contract. The record does not show how this deficit. was to be met, and we must presume that the intention was to levy, during the next year, an additional tax for that purpose,.

thus creating a debt against the county without the prerequisite assent of two thirds of the qualified voters thereof, and rendering the contract void. While the commissioners allege in their answer that there were "about $1,000" in the treasury of the county when the contract with McGinty was made, and that they had expended "some $400" of that sum in paying architects for drawings, plans and specifications, yet they do not allege that the balance, or any part of it, can be legally applied to paying McGinty for building the court-house; and even if the whole of such balance could be legally so appropriated, there would still be a deficit left to be provided for by future taxation.

3. As there was no court-house in the county, and as the necessary two thirds of the qualified voters thereof had failed to vote for the issuance of bonds to erect one, at an election held for that purpose, it was not only the right but the duty of the commissioners of roads and revenues to levy an extra tax sufficient to have one built. Political Code, §§ 351-2, 395-6; *Lewis* v. *Lofley*, and *Commissioners of Habersham County* v. *Porter Mfg. Co.*, supra. They prayed in their answer that, if the contract with McGinty should be declared to be illegal, they might be allowed to use the proceeds of the levy of the extra tax in having a court-house erected. We think this prayer should have been granted. For while we are of the opinion, for the reasons indicated, that the judge below erred in not granting an order restraining the commissioners from carrying · out the contract with McGinty and from paying him any of the county's funds on such contract, we think the commissioners should be allowed to have the extra tax of two per cent. collected, and with the same to have a court-house built for the county, under a contract to be executed as the law provides.

*Judgment affirmed, with direction. All the Justices concurring.*