## MANLY BUILDING COMPANY *v.* NEWTON *et al.*

1. County authorities whose duty it is to contract for the erection of a court-house or other public structure may, under the Political Code, §344, after advertising as is provided in section 345 thereof, cause the work to be done "by letting out the contract therefor to the lowest bidder, at public outcry, before the court-house door;" or such authorities may, either in the first instance, or after having undertaken to let the contract at public outcry and rejecting all bids received, have the work done "by contract or sealed proposals." When, however, the latter method is pursued, an indispensable prerequisite to the making of a lawful and valid contract is the inviting of offers or proposals, by advertising in accordance with the section last above named.

2. A notice which merely declares that "payments are to be made in cash and at such times as may be agreed upon by the contractor, ordinary, and archi-tects," does not meet the requirement of that section, which prescribes that the notice therein provided for shall embrace such particulars as will enable the public to know the "terms and time of payment."

3. When an ordinary advertises for sealed proposals for the erection of a court-house, and, after receiving, considering, and rejecting all such as are pre-sented to him, makes changes in the plans and specifications of the proposed

|     |     |
| --- | --- |
| 114 | 245 |
| 114 | 740 |

|     |     |
| --- | --- |
| 114 | 245 |
| 121 | 72 |

|     |     |
| --- | --- |
| 114 | 245 |
| 126 | 123 |

|     |     |
| --- | --- |
| 114 | 245 |
| 128 | 595 |

|     |     |
| --- | --- |
| 114 | 245 |
| 130 | 656 |

building, which in substantial respects vary its character and materially affect its cost, he can not, without further advertising, lawfully accept new proposals for the construction of the building, and award a contract therefor.

4. Taxpayers certainly may, within a reasonable time after such contract has been let, invoke equitable aid to enjoin the enforcement of the same for a noncompliance with the law in the letting, and can in no view be regarded as in laches in this particular when steps looking to that end are taken within a period of time less than a calendar month from the date when the contract is entered upon the proper minutes.

5. County authorities may, without being said to create a debt within the meaning of the constitution, contract for the building of a court-house to be paid for out of available funds in the treasury, or with the proceeds of taxes that have been or may lawfully be levied during the year in which the contract is made.

Argued November 4,— Decided November 7, 1901.

Injunction.    Before Judge Evans.    Tattnall superior court. August 26, 1901.

*Felder & Rountree* and *T. W. Hardwick,* for plaintiff in error.

*W. G. Warnell, J. K. Hines, R. L. Gamble,* and *E. J. Giles,* contra.

LITTLE, J.    Newton and others, averring themselves to be residents and taxpayers in the county of Tattnall, filed a petition in which Alexander, as ordinary of that county, and the Manly Building Company were made defendants.    The petitioners prayed, after making certain allegations, that the defendants be enjoined from performing and carrying out a certain contract which had theretofore. been. entered into between them for the construction of a court-house for the county of Tattnall, at Reidsville in said county, and that said contract be decreed to be void and of no force; and for general relief.    The record discloses the following to be the facts in relation to the execution of that contract.    The grand jury, at the April term of the superior court of that county, recommended that the ordinary proceed at once to let the contract for the building of a new court-house in Reidsville, not to exceed in cost the sum of thirty thousand dollars.    On April 10, 1901, in order to carry into effect that recommendation, the ordinary caused to be published, as provided by law, the following notice: "Notice to Contractors.    Sealed proposals will be received by the ordinary of Tattnall county at his office in the court-house, Reidsville, Georgia, up to 12 o'clock noon, Tuesday, June 11th, 1901, for the furnishing of all material and labor in the erection of a county court-house

for Tattnall county. All the plans and specifications are on file at the ordinary's office at Reidsville, Georgia, and also on file at the office of the architects, J. W. Golucke and Company, 4th floor Temple Court, Atlanta, Georgia, where they can be seen by prospective bidders. The building will be two and one-half stories high, about 60x125 feet in size, constructed of brick, stone, terra cotta, and iron. The first floor will contain the county offices and vaults for records. The second floor will contain the court-room, jury-rooms, judge's room, witness-rooms, etc. Payments are to be made in cash and at such times as may be agreed upon by the contractor, ordinary, and architects. Each contractor must enclose in his bid a one thousand dollar certified check, made payable to the ordinary of Tattnall county, as a guarantee that he will enter into contract at his bid, and give a good and solvent bond by a surety bond company authorized to do business in the State of Georgia, in double the amount of his bid, within twenty days after said contract is awarded him, and on his failure to comply with these terms the said check to revert to the county as liquidated damages. The right is reserved to reject any and all bids. By order of the ordinary, sitting for county purposes, this the 10th day of April, 1901."

It appears that there was in the treasury of Tattnall county, at that time, the sum of $12,500, available for the purpose of paying in part for the construction of the court-house. On May 28 the ordinary passed and entered on his minutes an order reciting the fact that as the grand jury at the April term, 1901, of the superior court, in addition to authorizing the levy of $1 as taxes on each $100 worth of taxable property in the county for the purpose of raising the State and county taxes for the year 1901, also authorized a levy to raise a sufficient fund to build and erect a new court-house, it was ordered that, in addition to such taxes for ordinary purposes, an amount be added thereto "sufficient to raise and pay for the erection of a new court-house for said county; . . that at the next regular September term of Tattnall court of ordinary, 1901, that the ordinary proceed to assess the proper rate to raise all the necessary funds for county purposes, . . and also to assess an extra per cent. or rate to raise a court-house fund sufficient to pay for the erection and building of a new court-house for said county." It also appears that, subsequently to the date of this order, it was ascertained that the taxable property of Tattnall county for the

year 1901 amounted to $3,712,745, and that the tax-rate for the year 1901, including State and county taxes, and the fund of $15,-500, necessary to be raised during the year 1901 to build the court-house, would fix the tax-rate at $1.30 on each one hundred dollars of property values in the county. On the 12th of June, before any bids were received, the Manly Building Company submitted to the ordinary a modification of the original specifications, which contemplated the use of less expensive material in certain particulars named, and reduced the size of the rooms in the proposed building as they appeared in the original plans, etc. Two sealed proposals were received for the construction of the building, under both the original and the modified plans. One of these was from Barber and Thurman, offering to construct the building under the original plans for $35,587, or $29,388 under the modified plans; the other was from the Manly Building Company, proposing to do the same work under the original specifications for $34,987, and under the modified plans for $27,750, and offering in addition to repair and repaint the common jail of the county without extra charge. Having considered these proposals, the ordinary awarded the contract to the Manly Company at the sum proposed by that firm under the modified plans and specifications; and the formal contract was executed, the contractors furnishing a bond in the amount provided by law, giving as security a surety company authorized to do business in this State. Following the execution of this contract the old court-house was moved, the contractors entered upon the work, purchased large quantities of material, put a force of hands to work preparing the foundations, and expended large sums of money in preparing to execute the contract, etc. These and other facts were made to appear to the judge at the hearing. He decided that the notice inviting sealed proposals was in law insufficient, and that therefore the contract between the county and the Manly Company was invalid. He further ruled, that the changes made in the plans and specifications were material and unauthorized, and that the ordinary could not let the contract, after making these changes, without readvertising for proposals; and an injunction was granted restraining the defendants from performing and carrying out the contract, and from building the court-house under the contract which had been executed. He, however, refused to enjoin the ordinary from raising and levying a tax sufficient to con-

.struct the court-house, but adjudged that the tax levy sufficient for that purpose must be made before any contract for the building .should be let. The Manly Company excepted, and assigned as error the ruling that the notice did not state the time and terms of payment with sufficient fullness; the ruling that the changes made .in the plans and specifications were material and unauthorized, and that the ordinary could not let the contract, after making said ·changes, without readvertising for sealed proposals ; the granting of ·the injunction; and the ruling that the tax levy must be made before any contract for building the court-house could be let.

1. It is contended on the part of the plaintiff in error that, under the facts contained in the record, the ordinary complied fully with the law regulating the method of making contracts for the ·erection of a court-house; and that the statute in this regard is merely advisory or directory, and not mandatory. By an act of ·the General Assembly approved September 29, 1879 (Acts 1878 – 9, p. 159), the manner of letting contracts to build or repair public buildings in the several counties of this State (costing three hundred dollars or more) was changed, and certain rules for such construction were prescribed; it was therein declared that it should be unlawful to let out any contract for the building or repairing of any public work unless certain provisions of the act were complied with, and that any contractor doing or having done any work of ·that kind (where the cost of the same was three hundred dollars ·or more) in any other manner than that prescribed should not be entitled to receive any pay therefor. Inasmuch as the act declares that it shall be unlawful to have the work done in any other manner than as prescribed, and that no contractor shall receive pay for .any work not done in the manner prescribed, its provisions are certainly more than advisory and directory; they are mandatory. The proceedings required to be followed in letting out the construction ·of a public work, by the original act, are substantially these: when it becomes necessary to build or repair any court-house or other public work, the proper authorities should cause the same to be done, by letting out the contract to the lowest bidder at public out-cry before the court-house door, after due advertisement. By an .act approved September 29, 1881, the original act was amended by adding the following: "Provided, that such county authorities .shall have authority to reject any and all bids at said public letting;

and if in their discretion the public interest and economy require it, such county authorities may build or repair any public buildings, bridges, causeways, or other public property in the county, by contract or sealed proposals, to be invited under the same provisions as to specifications and like information as are provided in this act." See Political Code, § 344. It will be noted that no part of the act of 1879 which prescribed the manner in which these contracts shall be let was repealed by the amendatory act. The only change made was the addition of a provision that, when a contract is sought to be let in the manner pointed out in the original act, the county authorities may reject any and all bids, and by providing an additional way for the letting of these contracts. The provision allowing the county to reject any and all bids was found to be necessary, we suppose, because of the fact that, by a combination between bidders at a public letting, the county might be forced to pay a price largely beyond the value of the work, and therefore be subject to imposition; hence, for the protection of a county, came the enactment of the provision giving the right to reject any and all bids at such letting. If all bids were rejected, then, without more, there would be no way of letting a contract of the character indicated, except by a renewed effort to let in the same way; and a continued combination between bidders might have the effect either to delay or prevent the work. To obviate this result the amendatory act further provided that the county authorities might, in their discretion, when the public interest and economy required it, provide for such work by contract or sealed proposals. It is contended by plaintiffs in error that the words of the amendatory act gave authority to an ordinary, when the management of county affairs is vested in him, to absolutely contract within his discretion for the erection of a court-house. On the other hand it is contended, for the defendants in error, that in all cases the ordinary must first proceed to let out the contract for the construction of the court-house to the lowest bidder, under the terms of the act of 1879; and, in the event that he rejects any and all bids made at such letting, that he is only then invested with the power to invite sealed proposals for the construction of the building. Neither of these contentions is sound. It was not the purpose of the General Assembly, as expressed by the amendatory act of 1881, to take away from an ordinary the power of letting out the contract to the

lowest bidder at public outcry, but it was the evident intention of the lawmakers to invest him, under certain circumstances, with an additional power in reference to the construction of public works; that is, to invite sealed proposals. It was not the purpose of the amending act to give such authorities any power to erect a court-house by a contract in their discretion, and without advertisement and opportunity for competitive bids. The act of 1881 declares expressly that such contract or sealed proposals shall be invited under the same provisions as to specifications and like information as are set out in the original act. Not only is this the grammatical construction of the proviso added by the act of 1881, but such a construction preserves the benefit of what was sought to be obtained by the original act which was left in force — competition in bidding. The plain meaning of the first section of the act as amended is, that county authorities may, after due advertisement, cause a court-house to be built by letting out the contract therefor to the lowest bidder at public outcry before the court-house door, or they may advertise for sealed proposals for the erection of the building, and let the contract thereunder. They may do either in the first instance; or they may, if they have undertaken to let the contract to the lowest bidder before the court-house door and have rejected all bids, then proceed to advertise for sealed proposals. But in no event can a contract lawfully be entered into for the erection of such building except after the advertisement provided by the act. These provisions of the act must be complied with in order to make a valid contract. While an immaterial variation would not have the effect to annul the same, the provisions prescribed must be substantially met.

2. Another provision of the act of 1879 declares that, whenever the contract is likely to cost a sum greater than five thousand dollars, the proper officers shall give notice in the public gazette wherein the sheriff's sales are advertised, once a week for eight weeks, and by posting a written notice at the court-house door for a like time, which notice and advertisement shall embrace such details and specifications as will enable the public to know and understand the character of the work to be done, and the terms and time of payment. It was ruled by this court in the case of *Dyer v. Erwin*, 106 *Ga.* 845, that, "Where county commissioners invite proposals for the erection of a public building to cost $300.00 or

more, and 'the terms and time of payment' are not stated in the notice and advertisement, a contract made in accordance with a bid submitted under such defective notice and advertisement is illegal." As will be seen by a reference to the copy of the notice found in the recital of facts above, the terms and time of payments are stated to be as follows: "Payments are to be made in cash and at such times as may be agreed on by the contractor, ordinary, and architects." This notice entirely fails to come up to the requirements of the statute. Under it the public can not know the time when the payments are to be made. The terms are cash, but the time of the payments of the cash is left indefinite. The statute requires that not only the terms but also the time should be definite. It was ruled by this court in the case of *Butts* v. *Little,* 68 *Ga.* 272, that a contract for the erection of a building at a specified price, which was to be completed by a certain time, and payment for which was to be made as the work progressed, on estimates to be made by certain architects, less fifteen per cent., was in effect a contract to pay the price agreed on by the date of completion as fixed. There the building was to be completed by a certain date, and for a specified price, and payments were to be made as the work progressed, to be based upon estimates to be made by the architects, less fifteen per cent. Had the notice under consideration embraced such specifications as these, it is probable that the requirements of the statute would have been met, because, the price having been named, the completion of the building fixed at a given date, and the manner of estimating the value of the work as it progressed, and payments, less fifteen per cent., to be made on such value, both the terms and time of payment would be fixed with reasonable certainty. In the present case, however, payments are to be made at a time in the future to be agreed on by certain named parties. This time might be at the completion of the work or before that time, and it is equally as possible for it to be at an indefinite time after completion. While the ordinary doubtless had in mind, when he framed this notice, that the payments were to be made as the work progressed, by agreement between the several parties named, still he did not say so; and the public, therefore were unable to ascertain from this published notice the time of payment. Inasmuch as this notice was a requisite to a valid contract, and the time of payment was by the notice left indefinite any contract made under it was invalid.

3. It is claimed that this contract is invalid for the reason that the ordinary, after having advertised for sealed proposals to erect the court-house, and after receiving and considering the proposals submitted to him, made certain changes in the plans and specifications of the proposed building, which were material, substantially reducing the size of the building, and, without further advertisement, let out the contract to the Manly Building Company under the changed specifications. That such changes in the original plans and specifications were made is practically admitted, and that the contract relied on was to construct the building under these changed plans appears by the evidence. The grand jury recommended the construction of the building at a cost not exceeding $30,000; and when the ordinary received proposals for the construction of the building according to the plans and specifications which had been prepared, it was ascertained that the bids for such construction exceeded the amount recommended by the grand jury, and in order to get within this amount such changes were made. These changes were certainly material. They reduced somewhat the size of the building, made material changes in the dimensions of certain rooms, and changed the material of the building originally specified to that which was less costly; the difference in cost under the original and modified plans was about $7,000. It appears also that these modifications of plans were not made until the day of the letting under the notice originally made for sealed proposals. We must rule that, under the statute which prescribes the manner in which such contracts shall be advertised, no legal contract could, under the circumstances stated, have been made for the construction of the building under the modified plans and specifications, without renewed notice, and a readvertisement inviting proposals under the changed plans and specifications. The act of 1879 (codified in the Political Code, § 345), after prescribing for advertisement and notice, and declaring that such notice and advertisement shall embrace details and specifications sufficient for the public to be informed of the extent and character of the work to be done, further provides that the officer having the letting of such contract shall make out and post conspicuously in his office complete and minute specifications of the proposed public work, which shall be open to inspection. Conceding that this was done as to the original plans and specifications, confessedly it was not done as to the modified

plans and specifications. It is necessary that complete and minute specifications for the proposed public work shall be so posted, and the whole spirit of the act confines proposals for the work to the plans and specifications thus posted. Inasmuch as no contract can be lawfully made for a work the plans and specifications of which are not posted, and there was no notice or advertisement nor posting in relation to the modified plans and specifications, no valid contract could have been entered into under them.

4. It was further insisted, inasmuch as defendants in error had full notice of the advertisement and making of the contract, that, having waited until the contractors had incurred great expense and done very considerable work in furtherance of their under-taking (all of which was accepted by the county), and delayed their complaint until the contractors would be greatly injured, they were guilty of laches, and were estopped from complaining. Even if we were to assume that a taxpayer would be estopped at any time from seeking to set aside an illegal contract made by the county in which he resides, the facts of this case show that such a doctrine can not be applied to the defendants in error. The contract was executed on the 12th day of June, 1901. By the Political Code, § 343, it is expressly declared that all contracts entered into by the ordinary with other persons in behalf of the county must be in writing and "entered on their minutes." The record in this case shows that this contract was not entered on the minutes of the ordinary until August 2, 1901, and plaintiffs' petition was filed August 19, 1901, seventeen days after the contract had been so entered. The entry on the minutes gave authoritative information that the contract had been made, and this seems to be the only way in which such in-formation is to be officially given; and if taxpayers can be guilty of laches in seeking to have an illegal contract set aside, by reason of lapse of time, certainly it can not be said that seventeen days would be such a time as would work an estoppel on account of un-reasonable delay. The record affords no reason for concluding that defendants in error were guilty of any laches in the institution of the proceedings to set aside the contract.

5. The only objection which we find to the terms of the injunc-tion granted by the trial judge against the ordinary is to that part in which it is ruled that a tax levy sufficient with the cash on hand to construct the court-house should be made before any contract

for building should be let. In the case of *Dyer* v. *Erwin,* 106 *Ga.* 845, this court in effect ruled that such taxes as might be lawfully levied for the purpose of constructing a court-house, during the year in which the contract is made, might be considered as a provision for the payment for such work, so as not to bring the purchase-price within the definition of a debt which could only be created under the sanction of a popular vote. In passing on that question Mr. Justice Fish, who delivered the opinion of this court in that case, said: "If the building was to be paid for out of available funds in the treasury of the county, or with taxes lawfully levied, or which could be lawfully levied during the year 1898 [the year in which the building was to be constructed], or partly with such funds and partly with such taxes, then the contract did not create a debt against the county within the meaning of the constitution, and was valid without such preliminary sanction of a popular vote;" for which proposition he cites a number of cases. See that case, page 848. The evident meaning of this ruling is, that taxes which may be lawfully levied during the year fixed for the construction may be counted as available funds for the payment of the contract price. Under this authority it is evident that a contract is not rendered invalid because the taxes to pay for the public work have not been actually levied; but if the amount to be used for such purpose can be lawfully levied during the year the contract is made, then the part of the contract price represented by such taxes is not to be considered as such a debt as can only be created by a popular vote. So, not only is the objection that the contract now under consideration involved the creation of a debt and not having been authorized, it is illegal, not tenable, but the injunction granted in the case should be so modified as not to restrain the ordinary from entering into a contract for the construction of the court-house, based upon the available cash in the treasury of the county and such taxes as might be lawfully levied during the year the contract is made. We direct that the injunction granted be so modified as to conform to this view of the law.

*Judgment affirmed, with direction. All the Justices concurring.*