## MAYOR AND COUNCIL OF MACON v. JONES.

Where the expenses of a municipal corporation, in excess of its revenues, have been allowed to accumulate for a series of years, the municipality has no lawful authority to issue its bonds to raise a fund for the payment of such indebtedness, though two thirds of the qualified voters of the municipality may assent thereto at an election held for the purpose of deciding whether such bonds shall be issued, Before bonds of a municipality can be lawfully issued, two thirds of its qualified voters must assent, at an election held for that purpose, for the municipality to incur or create the debt which the bonds are to cover.

Argued February 11, — Decided March 25, 1905.

Injunction. Before Judge Felton. Bibb superior court. October 29, 1904.

*Minter Wimberly,* for plaintiff in error.

*B. M. Davis* and *A. L. Miller,* contra.

FISH, P. J. On October 11, 1904, the city council of the City of Macon passed a resolution authorizing the mayor to publish a notice that at the regular election for aldermen, to be held on December 13, 1904, there would be submitted to the qualified voters of the city the question as to whether the city should issue its bonds for $175,000, to pay off its "floating indebtedness." The notice published in pursuance of the resolution stated that the election would be held "for the purpose of obtaining the consent of two thirds of the qualified voters of the City of Macon to the issuing of bonds in the amount of one hundred and seventy-five thousand dollars, or as much thereof as may be necessary, for the purpose of meeting any deficiency that may exist at the close of the year 1904, between the amount received for the collection of taxes and revenues of the Mayor and Council of the City of Macon; not represented by bonds heretofore issued." Ben L. Jones, a citizen and taxpayer of the City of Macon, filed his equitable petition, in Bibb superior court, against the mayor and city council, to prevent the holding of an election upon such question, and the issuing of the bonds of the city for the purpose indicated in the notice. On the interlocutory hearing it appeared that the floating debt of the City of Macon, as distinguished from its bonded indebtedness, was, on October 22, 1904, something more than $171,000; that of this amount the sum of $95,715.33 was expended for paving in 1897, 1898, and 1899,

and $8,787.04 for curbing and paving since that time; "that for paving in 1897 the city issued bonds aggregating in value $130,-000.00, which were sold for a premium of $2,111.80, all of which was covered into the treasury of the City of Macon; that the city levied taxes on adjacent property holders for said paving, aggregating $231,277.00, of which has been collected $209,277.00; that all of the money raised from the sale of the bonds and from the taxes assessed has been expended, and none now remains in the treasury of the city to pay the accounts" for paving and material therefor; "that the sum of $33,000.00 due the American National Bank and Trowbridge, Scott & Son was a temporary loan authorized by resolution of council to meet actual deficiencies; that the sum of $29,616.61 of approved vouchers was for current expenses and various liabilities arising by contract against the city, and was not paid because there were no funds on hand. In this amount was included $3,523.36 due Grady & Co., for what is known as concrete that was furnished to the city during the year 1898 for paving the street," for which voucher was approved on July 4, 1898. "Also included in said amount is an indebtedness of the City of Macon to the Macon Railway & Light Company, aggregating $11,667.77, for lights furnished to the city," the vouchers for which begin in August, 1903, and run down to the time of the hearing. The judge granted an order restraining the mayor and city council from calling or holding the election on the question as to the issuance of the bonds, until the final hearing of the case. To the granting of such order the mayor and council excepted.

We are clearly of opinion that the court did not err in granting the order excepted to. The constitution of this State provides that no municipal corporation shall incur any new debt,' except for a temporary loan or loans to supply casual deficiencies of revenue, without the consent of two thirds of the qualified voters thereof, at an election for that purpose, to be held as may be prescribed by law (Civil Code, § 5893), and that any municipal corporation which shall incur any bonded indebtedness under the provisions of the constitution shall, at or before the time of so doing, provide for the assessment and collection of an annual tax, sufficient in amount to pay the principal and interest of said debt within thirty years from the date of the incurring of said indebted-

ness (Civil Code, § 5894), and further that municipal corporations shall not incur any debt until provision therefor shall have been made by the municipal government. Civil Code, § 5897. It will be observed that the constitutional provisions are for the incurring of bonded indebtedness by municipal corporations, and that such indebtness shall be paid within thirty years of the date of its incurrence. The purpose of the constitution is to protect taxpayers from municipal extravagance, by providing that no new debt shall be incurred, except for a temporary loan to supply casual deficiencies of revenue, without the consent of two thirds of the qualified voters of the municipality. The right is conferred upon the voters to determine whether or not a bonded debt shall be created, and when they vote on the question whether a municipality shall issue bonds, they are deciding whether the indebtedness to be evidenced by the bonds shall be created. If a municipality, by acquiescence of its taxpayers, should be allowed to incur each year current expenses in excess of current revenue, and when such obligations, by long accumulations, should become burdensome to the taxpayers, then those upon whom such burden has been imposed should be permitted, by voting for an issuance of bonds to cover such accumulations of indebtedness, to shift the burden upon future taxpayers, an easy method to evade the salutary provisions of the constitution will have been discovered. Where it is necessary for a municipal corporation to levy a tax to meet expenditures for education, for paving or macadamizing streets, or for the payment of the principal and interest of the public debt, the levy and assessment of the same for each of such extraordinary expenses must be separately made and collected, and the municipal authorities must cause separate accounts to be kept of all amounts collected and disbursed on account of each of said extraordinary expenses; and all amounts so collected must be applied to the extraordinary expenses for which the tax was levied and collected. Pol. Code, § 720. "Any officer of any municipality who shall apply any portion of any fund collected by taxation, for either of said extraordinary expenses, to any other ordinary or extraordinary expense, shall be guilty of malpractice in office." Pol. Code, § 721.

This case does not involve any question as to bonds issued to renew or refund a bonded debt existing at the time of the adop-

tion of the constitution of 1877.    The evident policy of the constitution is, that all obligations of whatever nature of a municipality shall be paid as they mature.    If the money to meet them be not in the treasury, then it should be brought there in the way of taxes imposed and collected for the year in which the obligations mature.    If a municipality fails to provide for payment, or, having provided, fails to keep its contract, there is no provision in the constitution for changing the form of the obligation from an account or note to a bonded debt, by the assent of two thirds of the qualified voters.    Such debts could no more be renewed in this way than could a bonded debt, unpaid at maturity, be so renewed.    In *Epping* v. *Columbus*, 117 *Ga.* 263, 291, Mr. Justice Cobb well said : " There is nothing in the constitution which contemplates that a municipality or county can issue new bonds at the end of thirty years, or any other period less than that in which the principal is to mature, for the purpose of paying the principal of such bonds, where the original debt was incurred subsequently to the adoption of the present constitution.    The policy of the constitution is against the incurring of debts, except in cases where it is necessary, and that in such cases a debt incurred shall be discharged at its maturity.    This is clearly pointed out by Mr. Chief Justice Jackson, in *Walsh* v. *Augusta*, 67 *Ga.* 293."    *Judgment affirmed.    All the Justices concur.*