## HOGAN et al. v. STATE OF GEORGIA.

1. Where upon a petition to validate bonds, pursuant to the act of December 6, 1897 (Acts of 1897, p. 82), the judge directed the respondent to show cause before him at a place within his circuit, but outside of the limits of the county proposing to issue the bonds, and on the day appointed for the hearing certain taxpayers of the county presented to him their petition to intervene in the cause for the purpose of objecting to the validation of the bonds upon the grounds therein stated, and the judge endorsed thereon an order making the intervenors parties and directing that the intervention be filed, and the clerk of the superior court of the county proposing to issue bonds, being present, endorsed thereon an entry of filing, and the case was then and there heard on the issues made by such intervention, and a judgment of validation rendered, it is not a ground for dismissal of the bill of exceptions to such judgment that the intervention did not appear to have been legally filed.

2. The structure of the petition was substantially that which was held sufficient in *Spencer* v. *Clarkesville,* 129 Ga. 627 (59 S. E. 274).

3. The constitution of the State provides two ways for the construction of a public improvement and paying therefor; the one for cash and the other for credit. If it is determined by the proper authorities of a county to build a court-house on credit, before any steps to that end

can be taken the assent of two thirds of the qualified voters of the county must be obtained. A contract for the erection of a court-house may be made without a previous plebiscite vote, where the money necessary to pay therefor is either in the treasury or may be lawfully raised by the levy of a special tax for the current year. Where the county authorities lawfully contract for the .building of a court-house and levy a special tax for the current year sufficient to pay for its erection, upon the faith of which the contractor begins work, and where after the building has been one third completed the contractors have received county warrants for one third of the contract price, there is no authority of law for the county commissioners to order an election to determine whether bonds shall be issued, from the proceeds of which the cost of erecting the court-house shall be paid.

Decided March 1, 1910.

Validation of bonds. Before Judge Whipple. Irwin superior court. November 19, 1909.

*Otis H. Elkins* and *Joseph B. Wall*, for plaintiffs in error.

*Walter F. George, solicitor-general*, and *J. W. Quincey*, contra.

EVANS, P. J. The county of Irwin was without a court-house, as a result of the change of the county seat from Irwinville to Ocilla. The commissioners of roads and revenues contracted with the Falls City Construction Company, a corporation, to erect a court-house for the sum of $43,900, and included in the tax levy to be collected for the year 1909 an item of $2 on the hundred dollars to build a court-house according to contract. Shortly after the contract was executed the contractor proceeded with the erection of the building. On October 7, 1909, the building having progressed one third towards completion, the commissioners met in regular session and passed a very elaborate order, reaffirming the tax levy of two dollars on the hundred, and declaring that the funds so collected should be kept separate from the other county funds and be known as the "court-house building fund," and should be used by the county treasurer for no other purpose than to pay the orders and warrants drawn on this fund. It was further provided in the order that the commissioners should meet between the 1st and 10th of each month to allow the contractor's claim for material furnished and work done on the court-house during the previous month, and issue him warrants to the extent of 75 per cent. of the amount so audited. On that day the commissioners issued to the contractor county warrants in the sum of $14,500 in part payment for material furnished and work done up to that time. On October 12, 1909,

there came on to be held an election, called by the county commissioners, for the purpose of submitting to the qualified voters of the county the questions whether bonds should be issued by the county in the amount of $45,000, the proceeds of which should be applied to the purpose of erecting and furnishing a court-house in the county. Upon the face of the consolidated returns it appeared that more than two thirds of the qualified voters, according to the registration list, voted in favor of the issuance of bonds; and the solicitor-general of the Cordele circuit, which embraced the county of Irwin, was notified of the result and requested to proceed according to the provisions of the act approved December 6, 1897 (Acts 1897, p. 82), to validate the bonds. Agreeably to the notice the solicitor-general submitted a petition, in terms of the act, to the presiding judge of the Cordele circuit, who passed an order directing that the County of Irwin, by its proper officers, show cause before him at Cordele, on November 13, 1909, why the bonds referred to in the petition should not be confirmed and validated as provided by law. It was further ordered that the clerk of the court publish in a newspaper, at least twice before the hearing of the cause, a notice to the public that on the day specified the application for validation would be heard. On the day provided for the hearing E. J. Hogan and other taxpayers and residents of the county of Irwin presented to the judge their intervention, wherein they assigned certain reasons why the bonds should not be validated as prayed, and prayed to be made parties to the proceedings. The judge endorsed upon the intervention an order directing that the intervenors be made parties to the case, and that the petition be filed. The clerk of the superior court of Irwin county was present, and endorsed an entry of filing upon the intervention and demurrers of the intervenors. As cause for denying a judgment validating the bonds, it was averred in the intervention, that the notice calling an election for bonds and its publication did not comply with the law; that the election was illegally conducted at certain precincts; that there was fraud in the election; and that the county commissioners were without authority of law to call an election for the issuance of bonds, for the reason that the county authorities had previously levied a special tax to be collected during that year, sufficient to pay for the erection of a court-house, and a contract had been entered into with the Falls City Construction Company for its erection, and the Falls City Con-

struction Company had partially erected the court-house and had received as a payment thereon county warrants to the amount of $14,500. After hearing evidence the court passed an order validating the bonds, and the intervenors sued out this bill of exceptions.

1. On the call of the case in this court counsel for the defendant in error moved to dismiss the bill of exceptions, upon the ground that it affirmatively appeared therefrom that the plaintiffs in error did not file their intervention in the office of the clerk of the superior court, although such filing was endorsed thereon; it appearing from the bill of exceptions that the intervention was marked filed by the clerk when he was out of his office, out of the county of Irwin, at the city of Cordele, at the time he made the entry of filing. We do not think that this is cause for dismissal of the bill of exceptions. The judge of the superior court of the Cordele circuit ordered that the County of Irwin show cause before him at Cordele why the bonds sought to be issued should not be validated, and directed that the public be notified by publication that the hearing would there take place on the day specified. The intervenors presented their petition to the judge at the time and place provided in his order for the hearing of the application to validate the bonds. The petition was presented to the judge, and he passed a formal order making the intervenors parties and directing that the petition be filed. The case was heard that day on the rule to show cause. The pleadings of the intervenors were before the judge and considered by him. They are included in the transcript of the record as being of file in the clerk's office of Irwin county. Whatever issue there was before the judge was made by the pleadings of the intervenors; and surely it can not be contended, when the intervenors appeared before him agreeably to his order and presented their written objections to the issuance of the bonds, that the judge could refuse to hear them because they had not previously filed their intervention, where the statute does not require filing in the clerk's office as a condition precedent to hearing the case.

2. The intervenors demurred to the sufficiency of the application brought in the name of the State of Georgia by the solicitor-general against the County of Irwin. This petition is substantially the same as that which was held sufficient in *Spencer* v. *Clarksville*, 129 *Ga.* 629 (59 S. E. 274).

3.   Under the view which we take of this case it is not necessary to consider the alleged irregularities and illegalities connected with the holding of the election and the conduct of the managers of the different precincts; nor is it necessary to pass upon the rulings of the court relating to evidence.   This is so for the reason that, under the undisputed facts, at the time the election was called the county commissioners were without authority to call an election to authorize the issuance of bonds to pay for a court-house already contracted for and partially completed under a contract wherein its payment had been provided for from the revenue of the current year.   The constitution of this State forbids a county to contract a debt (not for a casual deficiency of revenue), unless authorized by previous plebiscite vote.   That instrument prescribes a well-defined fiscal policy for counties, and that policy is "pay as you go," unless before incurring a debt the requisite number of qualified voters have assented to the proposal that the particular debt might be contracted and paid for from the proceeds of a bond issue.   The constitutional provision that no county shall incur a new debt, except for a temporary loan to supply a casual deficiency of revenue, without the assent of two thirds of the qualified voters thereof, comprehends both the incurring of the debt and its payment in the future. It is impossible to separate this duality of purpose.   When the duly constituted authorities of a county determine to erect a court-house, the preliminary proposition is: shall the contemplated building be built for cash or on credit?   If the latter alternative is adopted, the county authorities are powerless to move one step towards the erection of the building until two thirds of the qualified voters of the county have assented to the proposal to erect the court-house on credit.   On the other hand, if the governing authorities determine to build a court-house to be paid for from the current revenue, no previous vote of the people is necessary, and they may proceed at once with its construction, having due regard to the provisions of law respecting their authority to build, and provide payment out of the revenues of the current year.   In *Commissioners of Habersham County* v. *Porter Manufacturing Company,* 103 *Ga.* 613 (30 S. E. 547), it was said: "If a tax levy has been made for the purpose of paying for a necessary county building, the county authorities may make a contract to that end, provided that the amount to be paid under the contract will not be in excess of the amount levied

for the purpose, and the contract will be valid notwithstanding the fact that at the time it is made the taxes are uncollected." In subsequent cases it was held that an antecedent tax levy was not necessary to the validity of the contract, if the amount of money to be used for this purpose can be legally levied during the year the contract is made. *Dyer* v. *Erwin,* 106 *Ga.* 845 (33 S. E. 63); *Manly Building Company* v. *Newton,* 114 *Ga.* 245 (40 S. E. 274). In other words, the ability to raise by a tax levy of the current year sufficient money to pay for a public improvement is the equivalent of money in hand, and the transaction is a cash one, and no debt is created. According to the undisputed facts in the record, not only had a sufficient tax been levied to pay for the court-house under the contract, but before the bond election was held the county commissioners had passed an order ratifying and confirming the tax levy of two dollars on the hundred dollars, in which order elaborate provisions were made for the issuance of warrants to the contractors, to be drawn upon the special fund produced from the collection of this special tax. It also appeared that prior to the election for bonds the contractor, in pursuance of this contract, had built about one third of the building, and the county commissioners had issued in part payment therefor county warrants to the extent of $14,500. It is true that these warrants had not been paid, and the taxes had not in reality been collected. Taxpayers are not compellable to pay their taxes prior to December 20th of each year, but it is their privilege to pay the taxes at any time after the digests have been deposited with the tax-collector and the comptroller-general has directed him to proceed with their collection. At the time this election was held the tax-collector was authorized to collect taxes, though the record is silent as to whether any taxes were collected. Treating the taxes levied for the payment of the contract price as the equivalent of money in hand, the payment for the court-house has been provided for. The levy of the special tax had not been rescinded at the time of the hearing of the validating proceedings. It was said in *Johnson* v. *Pinson,* 126 *Ga.* 124 (54 S. E. 922), that "The county authorities had no right either to rescind the levy or suspend the collection of the tax, unless it became apparent that the amount to be realized from the collection of the tax would be more than sufficient to discharge the liability under the contracts; in which event they might have been authorized to rescind the tax

levy in part or suspend the collection of the tax as to such an amount as was unnecessary for the discharge of the amount due under the contracts.    The persons with whom the contracts were made, or any taxpayer of the county, would have the right to appeal to the courts to compel the collection of such an amount under the levy as was sufficient to discharge all liability under the contracts for the erection of the buildings." Certainly the contractor had the right to insist upon the payment from the special tax levy for the current year.    The levy and collection of these special taxes entered into and became a part of the contract for the building of the court-house.    Suppose that these bonds were validated and, because of a sudden financial panic or for other cause, a ready market was not to be found, it could not be contended that the contractor must forego his right to insist upon payment for his work and material from the special tax, and wait upon any uncertainty pertaining to the floating of the bonds.    If the county commissioners be without authority to rescind the tax levy, and the contract has been made and partly performed upon the faith of it, and the county be allowed to issue these bonds, then the court-house will have been paid for from the direct tax levied and collected during the current year, and the money obtained from the floating of the bonds would be in the treasury, impossible of application to the use for which their issuance was authorized by the people.    The proposal to issue bonds in this case is in effect to incur a debt, not from the performance of the contract, but from breaking it and making a different contract.    As we have already indicated, the constitutional permission to issue bonds involves the assent by the people, as expressed in the ballot-box, not only as to whether bonds shall be issued, but also whether the enterprise shall be undertaken on the basis that it is to be paid for in the future.    *Mayor &c. of Macon* v. *Jones,* 122 *Ga.* 455 (50 S. E. 340).    The framers of our constitution were very jealous against piling up debts upon counties and municipalities, and only authorized the creation of a debt to be discharged by bonds when two thirds of the qualified voters assented to the same.    A debt can not be first created, and consent obtained afterwards.    Neither can a debt be created by the refusal to pay the liability when there are ample funds in the treasury, or a special tax has been levied, and the liability created upon the faith of the levy of special tax for the current year.              *Judgment reversed.    All the Justices concur.*