JOHNSON *et al. v.* PINSON *et al.,* commissioners.

On August 29, 1904, the county authorities levied a tax of $16 on each thousand dollars of the taxable property of the county, the proceeds of which were to be used in erecting a court-house and a jail. On September 6, 1904, contracts were entered into for the erection of these buildings. On October 21, 1904, the county authorities suspended the collection of all the tax levied, above referred to, except $6 on each thousand dollars of taxable property. On September 28, 1905, the county authorities levied a tax to pay the legal indebtedness of the county, embracing in such levy a percentage sufficient to pay the balance due the contractors who were erecting the buildings above referred to. *Held,*

(1) That the tax levy of 1905 was illegal and should have been enjoined.

(2) That the county authorities should proceed to collect the balance due on the tax levy of 1904, for the purpose of discharging the liability on the contracts for the erection of the buildings.

ATKINSON, J., dissenting. The tax levy of 1905 for the purposes mentioned in the headnote by the majority of the court was not illegal, and should not have been enjoined.

Argued January 17,—Decided March 23, 1906.

Petition for injunction. Before Judge Spence. Worth superior court. December 18, 1905.

Johnson and others, citizens of Worth county, filed a petition for injunction against Pinson and others, county commissioners of Worth county, and alleged, that at a meeting of the county commissioners on September 28, 1905, a tax levy for the year 1905 upon all the taxable property in Worth county was ordered, which contained the following items: (1) To pay the legal indebtedness of the county, due or to become due during the year, and past due: one hundred and twenty-three per cent. of the amount levied by the State, or $6.027 per thousand dollars worth of taxable property;" and (9) "To pay any other lawful charge against the county: eight and fifty-three one hundredths per cent. of the amount levied by the State, or $0.0418 per thousand dollars worth of taxable property." It was alleged, that the legal indebtedness of Worth county, due or to become due during the year 1905, amounted to practically nothing, and no tax was necessary to meet such indebtedness; that the real purpose of levying the tax above set out was to pay an indebtedness illegally contracted by the commissioners, as follows: In 1904 the county commissioners entered into a contract for the erection of a court-house and a jail at a cost of $60,000. During the year 1904 the county commissioners levied a tax sufficient to

discharge this indebtedness, but the tax was so exorbitant that the commissioners rescinded their action, and collected only a part of said tax. $9,000 is due on the jail, $8,000 due on the court-house, and $11,500 is due C. A. Alford, borrowed for payments on these contracts. It was alleged that none of this indebtedness was contracted during the year 1905, that it was illegally contracted, and that the tax of 1905 was being levied and collected for the purpose of paying off these sums. An injunction against the levy and collection of the tax was prayed. By amendment it was alleged that the petitioners sued in behalf of themselves and all taxpayers of Worth county. In their answer the defendants allege, that the contracts were entered into for the erection of a jail and a court-house, and that to pay for the same a tax of $16 per thousand was levied in 1904 on all the taxable property in the county. On October 21, 1904, the commissioners passed an order modifying the tax levy, so as to instruct the tax-collector to collect at that time only $6 on the thousand, temporarily leaving the remainder of the $16 uncollected, but in no way rescinding the levy. The defendants allege that of the $11,500 borrowed from Alford $7,875 was used as a payment on the court-house, and that it was their purpose to pay the $11,500 out of the tax levied for 1905. The note made to Alford was transferred, before due, to B. J. Sloan. It is further alleged that the debt due by the county on the above-described contracts accrues as the payments thereon become due. The jail has been almost completed, and is now occupied by the sheriff, and $3,-430.94 has been paid thereon. $39,375 has been paid on the court-house, there is now outstanding a county order for $7,875, and the last payment of $5,250 will soon become due, as the building is almost complete. The tax-collector of Worth county has collected about $8,000 under the levy sought to be enjoined, many taxpayers having paid the full tax required of them under the levy. The defendants demurred to the petition, on the ground that it appeared therein that the petitioners had been guilty of laches, and were not entitled to equitable relief. After a hearing, the injunction was refused, and the petitioners excepted.

*J. H. Hall, J. B. Hutcheson,* and *Warren Roberts,* for plaintiffs.
*J. H. Tipton,* for defendants.

Cobb, P. J. (After stating the foregoing facts.) The removal of the county site of Worth county left the county without a jail and

court-house. It was the duty of the county authorities to supply these buildings. The taxpayers having refused to give their consent to the incurring of a debt, the county authorities were authorized to levy a tax sufficient in amount to meet these expenses. In *Commissioners of Habersham County* v. *Porter Mfg. Co.,* 103 *Ga.* 618, it was said, "If a tax levy has been made for the purpose of paying for a necessary county building, the county authorities may make a contract to that end, provided that the amount to be paid under the contract will not be in excess of the amount levied for the purpose, and the contract will be valid notwithstanding the fact that at the time it is made the taxes are uncollected." See also *Dyer* v. *Erwin,* 106 *Ga.* 845; *Manly Building Co.* v. *Newton,* 114 *Ga.* 255. On August 29, 1904, the county authorities levied a tax of $16 on each thousand dollars of taxable property, the proceeds of which were to be used in erecting a court-house and a jail for the county. As this tax was to be collected during the year, the county authorities were authorized at any time after this levy, although the tax was uncollected, to make a contract for the erection of the court-house and the jail in any amount they saw proper, which was not in excess of the sum that would be realized from the collection of the tax. On September 6, 1904, the county authorities entered into contracts for the erection of a jail and a court-house, and the amounts to be paid under these contracts do not appear to aggregate a sum in excess of the amount which would be the fruit of the tax levy. The county authorities should have proceeded to collect the taxes as levied, and paid the same into the county treasury, to be there held to discharge the amounts due on the contracts at such times as it was provided in the contracts that the amounts should be payable. The levy of the tax was legal and proper. With such a levy in existence the contracts were valid and binding, and all that was to be done in the future was a compliance on the part of the contractors with their contract, and the payment to the contractors by the county authorities of the amounts stipulated in the contracts out of the proceeds of the tax levy. If this had been done, the whole transaction would have been regular from its inception to its conclusion. The county authorities, however, saw proper, on October 21, 1904, within less than two months after the tax levy, to pass an order which in effect directed the tax-collector to collect only a portion of the levy, that is, only $6 on

·each thousand dollars of taxable property. Plaintiffs in error·contend that this order rescinded the levy of the tax. Defendants in ·error contend that this did not have the effect of rescinding the .levy, but simply suspended. the collection of the tax under the levy. Under the view which we are taking of the case,. it is immaterial ·whether the order be construed as one rescinding the levy, or as ·suspending the collection of the tax. The county authorities had ·no right either to rescind the levy or suspend the collection of the ·tax, unless it became apparent that the amount to be realized from the collection of the tax would be more than sufficient to discharge ·the liability under the contracts; in which event they might have ·been authorized to rescind the tax levy in part, or suspend the col-·lection of the tax as to such an amount as was unnecessary for the ·discharge of the amount due under the contracts. The persons ·with whom the contracts were made, or any taxpayer of the county, ·would have the right to appeal to the courts to compel the collec-·tion of such an amount under the levy as was sufficient to discharge .all liability under the contracts for the erection of the buildings. ·On September 28, 1905, the county authorities levied the tax for that year, and there is embraced in the levy a tax to pay the legal indebtedness of the county, and this alleged indebtedness embraces the balance due for the erection of the buildings, which the county .authorities have no funds in hand to discharge, for the simple :reason that they failed to collect the entire levy for 1904. The ·present suit is to enjoin the collection of this portion of the levy ·of 1905. The true purpose and intent of the constitution is to prevent the subordinate political corporations of the State from paying, ·out of the .taxes of future years, an expense that ought to be paid out of the taxes of the current year, unless the people have assented to this arrangement by a two-thirds vote. See *Dawson Waterworks* .case, 106 *Ga.* 696. If county or municipal authorities were per-·mitted to levy taxes sufficient in amount to pay current expenses, .and suspend the collection of a portion of such levy, and then in ·a subsequent year levy a tax to pay a legal indebtedness claimed to have been incurred on account of the failure to collect a tax, the whole scheme of the constitution would be at once destroyed. The tax levy for 1905, so far as it was intended to raise an amount suffi-·cient to pay the sums due under the contracts for the erection of public buildings, should have been enjoined. The tax-collector

should proceed to collect that portion of the tax levy of 1904 which is uncollected, on the basis of the tax digest for 1904.

The decision in *City of Conyers* v. *Kirk*, 78 *Ga.* 480, has no application to the present case. In that case the City of Conyers. made a cash contract for the purchase of lamps. At the time the contract was made the city had in its treasury an amount sufficient. to pay for the lamps. The lamps were delivered, and the city authorities refused to pay. It was held that that was not a debt,. within the meaning of the constitution, and the city could be held liable. No debt was ever intended; and while the failure to pay made a debt, the debt originated not by virtue of making the contract, but by breaking it. As said by Mr. Chief Justice Bleckley in that case: "Surely there never can be and never will be any law against paying a debt which arises from default in making a cash payment at the time the debtor ought to have made it, the cash. sufficient for the purpose being in the debtor's treasury." While in the present case the cash sufficient to pay for the erection of these buildings was not in the treasury when the contract was made,. there was a lawful tax levy, which, if carried into effect, would have placed a sufficient amount in the treasury; and there is no reason why it should not now be there placed, and the persons contracting with the county be paid from the very source and with the very money with which it was intended that they should be paid at the time the contract was made. The county authorities have not. broken their contracts with the contractors by failing to pay cash on a cash transaction, but they have broken faith with the law and with the taxpayers by attempting to place upon the taxpayers of one year a burden which the law says shall not be placed upon them, this attempted burden claiming to have resulted from. the failure of the county authorities to collect a tax lawfully levied, and which should have been collected during the year it was levied. If the county authorities had exhausted the levy of 1904, and the entire amount realized therefrom had been paid into the treasury, and then, before payment to the contractors, the amount had in some way been lost to the county, the principle in the case above referred to might be applicable. But that case can not apply under any circumstances where the failure to pay is due to the fact that the authorities have failed to collect a tax lawfully levied and the levy is. still outstanding. The case of *Holt* v. *Parsons,* 118 *Ga.* 895, and

similar rulings have no application to the present case. In that case the delay of the taxpayers in contesting the validity of the tax brought about expenditure of money by the contractors; and if the tax had been declared illegal, the contractors would have lost money, for there would have been no power in the county authorities to levy a tax for the amount due them. In the present case the contractors will not lose money if the tax levy of 1905 is enjoined. They will be paid every cent due 'them out of the fund which the law requires they should be paid from, that is, out of the tax levy of 1904, which was in existence at the time the contracts were made, and which was the basis of the contracts. The county authorities had no right to purposely create a deficiency in the treasury by a failure to collect a tax which was lawfully levied, and call it 'a casual deficiency; and therefore the amount which they borrowed from Alford to pay to the contractors was not authorized as a loan founded upon a casual deficiency, in the sense of the constitution. But if any of the amount borrowed from Alford was actually paid to the contractors, and discharged a liability against the county which ought to have been discharged out of the tax collected under the tax levy of 1904, the county authorities may properly repay to Alford or his assignee, out of the tax of 1904, when collected, such portion of the amount due him as was actually so paid. *Peed* v. *McCrary,* 94 *Ga.* 488 (4). Whether the person now holding the Alford note could, as an innocent purchaser, recover the entire amount of the note is a question not involved in the present case.

    *Judgment reversed. All the Justices concur, except* '

ATKINSON, J., dissenting. It is conceded that the liability of the county became fixed by the levy of a tax sufficient to build a court-house and jail, followed by the execution of a contract for the building. Nothing remained except performance by the contractor and payment by the county. The obligation to pay is never that of the individual taxpayer, but always that of the county. With the liability fixed and the work under the contract completed, no condition could arise by which the county could avoid the payment. Taxation is the method of raising money for the payment of legitimate obligations. The county can exercise that right voluntarily, as it should do; but if it refuses, the one to whom the obligation is due can by law compel the collection. After the lia-

bility has been fixed, it is no defense to a second levy of a tax for its satisfaction that the original levy had been abandoned,—certainly not where irreparable injury is not shown to result to the party complaining; and there was none in this case. The abandonment of the first levy would not satisfy the obligation. In my opinion there could be no limit to the taxing power of the commissioners until the demand was satisfied.