GAINES *et al.* v. DYER *et al.*

128    585
129    194
f130   357

1. In the County of Hall the commissioners of roads and revenues have jurisdiction to establish public roads and construct public bridges. In the matters of locating the site and constructing public bridges and determining the cost of the same, the commissioners have a broad discretion which will not be disturbed by the court unless plainly and manifestly abused.

2. It is not an abuse of discretion for the commissioners to levy a tax. and enter into a contract for the construction of a public bridge in an existing public road merely because no bridge has previously existed or because no public bridge has been formally established by legislation or previous judgment of the commissioners.

3. It is an abuse of discretion for such commissioners to levy or collect. a tax or enter into a contract for the construction of a public bridge. at a site not embraced in an existing public road. But where it appears that the bridge is intended to be constructed as a public bridge and that the commissioners can legally establish a public road which would embrace the proposed site, this court will not unqualifiedly reverse a judgment of the chancellor who refuses to enjoin the enforcement of the levy and construction of the bridge, but, in affirming the judgment, will direct a modification to the effect that injunction do issue until such public road be established, at which time the enforcement of the levy and construction of the bridge shall be permitted to proceed.

4. The acts creating the commissioners of roads and revenues for the County of Hall (Acts 1886, p. 265; Acts 1903, p. 338) authorize special as well as regular meetings, and provide that two members of the board shall constitute a quorum. Two members of the board may exercise corporate authority, either at special or regular meetings, in the matter of levying a special tax for building public bridges and in the matter of executing contracts for the construction of such bridges.

5. The act of the ordinary of Hall county, participating as ex-officio member of the board of commissioners of roads and revenues, in levying a special tax and making a contract for the construction of a public bridge, is valid, whether he be treated as an officer de jure or de facto; and under the issues made in this case it is not necessary to inquire into the constitutionality of the act of the legislature making him such ex officio member.

6. It was competent for the commissioners, on November 1, 1906, to levy a special tax for the purpose of building a public bridge for which there was a present necessity. This is true although a previous levy may have been made for the same purpose and partly collected, and afterwards adjudged illegal and set aside.

(a) It was not necessary to the validity of the levy of such special tax. that the contract for the construction of the bridge should have previously been executed.

(b) A levy of an extra tax which was substantially in the language of the Political Code, §404, par. 2, sufficiently specifies the purpose for which the tax was levied.

(c) A special tax levied for the purpose of constructing a public bridge is authorized by law, and a recommendation of the grand jury is not essential to its validity.

7. A contract between the county authorities and another person for the construction of a public bridge for which there is a present necessity, entered into after the levy of a special tax sufficient to pay for the bridge, and during the same year, does not create a debt, although it

is contemplated that the contract price shall be paid in whole or in. part during a succeeding year.

Argued January 7,—Decided July 10, 1907.

Petition for injunction. Before Judge Kimsey. Hall superior court. December 4, 1906.

The board of commissioners of roads and revenues of the County of Hall was created by act of the General Assembly, ap-- proved December 23, 1886. Acts 1886, p. 268. It was pro-- vided that the board should consist of three members, citizens of Hall County, to be elected by the grand jury, and authority was. conferred upon the board to deal with county matters. It was also provided "that said commissioners shall hold at least one meeting each month, and . . may hold special sessions in addition to the regular monthly sessions, whenever the interests of the county demand it." It was also provided, "That two of said board shall be a quorum, and two must concur to pass any order, or let any contract, pledge the county credit, or grant or allow any claim against the county." This act was amended by the act of the Gen-- eral Assembly approved July 30, 1903 (Acts 1903, p. 338), so as to provide that "at the next regular election for members of the General Assembly in said County of Hall, and at each succeeding: regular election for members of the General Assembly, there shall be elected by the qualified voters of said county two citizens of said county, who shall, with the ordinary of said county, constitute a board of commissioners of roads and revenues, upon taking the oath hereinafter prescribed." On October 23, 1906, W. N. Dyer was ordinary and claiming to act ex officio as a member of the board of commissioners of roads and revenues. At the same time D. H. Jarrett and R. C. Simmons were two members of the board of commissioners of roads and revenues, having been elected by the people under the provisions of the act of 1903. On. the date last mentioned, Dyer and Jarrett held a special meeting at the office of the commissioners of roads and revenues, and passed an order "that sealed bids for a bridge across the Chattahoochee river at a point known as Browning's ferry crossing be advertised for in the Gainesville Eagle, and also that sealed bids for a bridge across the Chattahoochee river at a point just below what is known as the old Seven Islands ford be advertised for in the Gainesville.

Eagle." In pursuance of that order, Dyer and Jarrett as commissioners of roads and revenues of Hall County prepared an advertisement and proceeded to publish the same, calling for sealed bids to be received by the commissioners of roads and revenues of Hall County on Saturday the 24th day of November, 1906, for the erection of the two bridges in question. On the first day of November, 1906, Dyer and Jarrett, as commissioners of roads and revenues of Hall County, in regular session, sitting for county purposes, passed an order in part as follows: "It appearing that the taxable property for Hall County for the year 1906 amounts to the sum of $5,912.867, and it further appearing that the taxes levied by the State for the year 1906 is 48 cents on each hundred dollars, it is therefore ordered that the following several per cents. on said tax be and the same are hereby levied for the following specific purposes for county taxes in the present year, 1906, to wit, to build and repair court-houses and jails, bridges or ferries or other public improvements according to contract, 24 1/3 per cent. of 48 cents equals $6,906.12." The item of $6,906.12 was one among several items for county purposes. It is not necessary to state the others, for the reason that they are not involved in the case and no question is raised with respect to them. After the levy of the tax just referred to, the bids of W. W. King, a contractor, were, on November 24, 1906, accepted by said Dyer and Jarrett acting as commissioners for the erection of the two bridges, one at $2,950 and the other at $2,450, and written contracts were executed therefor and entered upon the minutes of the board of commissioners. Fuller, as tax-collector of Hall County, proceeded to collect the tax levy. In December, 1906, H. W. T. Gaines and others, in behalf of themselves and others as citizens and taxpayers of Hall County, filed a petition for injunction and other relief against Dyer and Jarrett and Simmons as commissioners of roads and revenues of Hall County, and likewise against King, the contractor, and also against Fuller as tax-collector. In the petition it was contended that the tax levy of $6,906.12 was made only for the purpose of raising money to erect said two bridges. Numerous reasons were alleged as to why there was no authority for constructing said bridges, and as to why the contracts were illegal, and as to why the levy of the tax was unnecessary, unreasonable, and void. There were prayers to enjoin the tax-collector from col-

lecting the item objected to in the general tax levy, to which reference has been made, and to enjoin the contractor from building the bridges and to enjoin the commissioners from collecting the tax and from building the bridges. There were also prayers for a decree setting aside the levy of the special tax already mentioned, and cancelling the contract entered into by Dyer and Jarrett as commissioners with King, the contractor. By amendment there was a prayer that, in the event the court should not enjoin the collection of the tax levy of $6,906.12, the commissioners be enjoined from using any portion of the taxes for the purpose of paying for the erection of the bridges in question. Upon the hearing the court refused the injunction, and the plaintiffs excepted.

H. H. Perry, W. N. Johnson, and J. O. Adams, for plaintiffs.

H. H. Dean, Thompson & Bell, W. B. Sloan, F. M. Johnson, and Ed. Quillian, for defendants.

ATKINSON, J. 1. In the petition for injunction complaint is made of the levy of an extra tax for the amount of $6,906.12 from the proceeds of which it is alleged that the county authorities were intending to construct the two public bridges, one at Browning's ferry crossing and the other "at a point just below what is known as the Old Seven Islands ford." It was insisted that the levy of this tax was illegal and that the contracts for the construction of the two bridges in question were illegal, among other reasons, because: (a) no public necessity for either of the bridges existed; (b) no public bridge had previously existed at either place where it was proposed to construct the bridges; (c) no bridges had been established at said points by any authority of law; (d) the cost was so great as to amount to useless extravagance. Under the act of 1886 (Acts 1886, p. 265), as amended by the act of 1903 (Acts 1903, p. 338), the commissioners of roads and revenues of Hall County have jurisdiction over the county affairs, and have authority to lay out public roads, construct public bridges, and make special tax levies, among others, for the purpose of providing funds for the construction of bridges. As an incident to the authority just stated, the commissioners primarily have the right to determine when a necessity exists for the construction of a public bridge, and what amount of money will be expended for the purpose. In the exercise of these several powers the commissioners may exercise a broad discretion which will not be disturbed by the

courts unless plainly and manifestly abused. In the case of *Anderson* v. *Newton,* 123 *Ga.* 512, where the powers of commissioners similar to those now under consideration were being reviewed, Mr. Justice Evans, speaking for the court, said (p. 521) : "The court correctly held that the board of commissioners was vested with discretionary power with respect to deciding whether or not the erection of a new court-house was a present and urgent public necessity, and, if so, upon what site it should be built." In the case of *Commissioners* v. *Porter Mfg. Co.,* 103 *Ga.* 617, Mr. Justice Cobb, speaking for this court, said: "The discretion vested in the county commissioners must be from the nature of the case a broad one, and therefore the reviewing power of the judge of the superior court must be exercised with caution, and no interference had unless it is clear and manifest that the county authorities are abusing the discretion vested in them by law." As to the existence of a public necessity for each of the bridges in question and as to the reasonableness of the expenditure of the amount of money contracted to be paid, the evidence, though conflicting, was ample to support the conclusion of the commissioners that a public necessity actually existed and that the expense was not unreasonable. It follows that upon these points there was no abuse of discretion.

2. We may next consider whether the location and construction of the bridges at the particular places in question, where public bridges had not previously existed and where there had been no procedure in the courts, or legislation, formally establishing public bridges as such, was an abuse of discretion. In determining this question, we call attention to the fact that there is no separate provision of law requiring action, either by the courts or by legislation, in order to establish a public bridge. A public bridge is no more than a part of the public highway. Pol. Code, §5. In an existing highway, where there is a public necessity for a bridge and the finances of the county will permit, it is as much the duty, and equally within the power of the commissioners, to construct the bridge by contract, or otherwise, as it would be within their power and duty to make any other improvement in the highway equally necessary to the public convenience. It does not require any formal procedure to authorize the commissioners to construct a public bridge in a public way, where the public convenience demands the construction of such bridge. We can see no abuse of

discretion in undertaking to construct a bridge at Browning's ferry crossing.

3. As to the bridge to be constructed "at a point·just below what is known as the Old Seven Islands ford," the question is somewhat different, because, while the place at which the bridge is to be constructed is "just below . . the Seven Islands ford," it does not affirmatively appear that the place of contemplated location is in an existing public road. The pleadings and evidence are of such a character, however, as to show an irresistible conclusion that it is the intention of the commissioners to construct the bridge, as a public bridge for the use of the public and provide suitable approaches thereto from the public roads of the county, in such manner as to render the bridge a part of the public highway. If that be done, the distinction between this and the case of the bridge at the Browning's ferry crossing would be eliminated. Both bridges would be a part of the public highway. It is possible for the commissioners to extend the public road in such way as to approach and include this bridge. That could be accomplished in pursuance of § 520 of the Political Code, and by the exercise of the right of eminent domain, or by purchase or dedication. See *Southern Ry. Co.* v. *Combs,* 124 *Ga.* 1004. But while it is possible to create a public road, which would embrace the location of the contemplated bridge, in one of the methods just suggested, there are contingencies which could prevent such creation. It may be that the owners of the land would refuse to dedicate, or it may be that the owners of the land would refuse to sell, and the condition might arise by which the authorities would be bound to pursue the provisions of the Political Code, § 520, and take the property by the exercise of eminent domain, in which event the viewers provided for in § 520 may fail to agree to the location of the road at the particular point where it is proposed to construct the bridge. So long as these contingencies exist, it does not seem that it would be a wise exercise of discretion to levy or collect a tax or expend public money in the construction of the bridge, because the contingencies may eventually create a legal obstacle of such character as to prevent the public enjoyment of the bridge. Certainly the citizens should not be taxed for a purpose which the public could not enjoy. It is by no means certain in the case at bar that the contingencies mentioned will happen in such way as

to create a legal obstacle of the character above mentioned; and while, for the reasons indicated, it would have been proper for the authorities to have established the road in advance, we would not on that account alone unqualifiedly reverse the judgment refusing to grant the injunction. If the road is legally established and the bridge should be constructed, the citizens and taxpayers will derive every benefit from the bridge that would have been afforded had the road been previously established in one of the ways recognized by law. Under all of the existing conditions, we think it would have been better for the judge to have enjoined the construction of the Seven Islands ford bridge, and the levy and collection of so much of the tax as was intended to be applied to that purpose, until the commissioners had, in accordance with law, established a public road so located as to embrace the site of the proposed bridge, providing, however, that when the road was so established, then the officers be allowed to execute the levy and the contractor proceed with the construction. As already indicated, we see no abuse of discretion with respect to the bridge at the Browning's ferry crossing, and see only occasion for modifying the judgment to the extent just indicated with respect to the Seven Islands ford bridge.

4. Another objection to the levy of the special tax and execution of the contract for the construction of the bridges, which was raised and insisted upon as ground for injunction, was that there was no corporate action authorizing the levy or contract; that the only pretended corporate action was that of two of the commissioners in the absence and without the knowledge or concurrence of the third commissioner. The act as amended, which creates the board of commissioners of roads and revenues of Hall County, authorizes special meetings to be held and makes two members of the board a quorum. Acts 1886, p. 265; Acts 1903, p. 338. The evidence disclosed that the levy was made at a regular meeting, and that the contract was authorized at a special meeting of the commissioners lawfully assembled at the office of the commissioners. There was nothing to suggest fraud. One member was not present, but there was sufficient evidence to authorize the court to find that the absent commissioner did know of the meeting and could have been present and could have participated if he had so desired. This completely answers the objection.

5. Another objection to the levy of the special tax and execution of the contract, which was relied upon as a ground for injunction, was that Dyer, the ordinary, had no right to act as one of the commissioners. Among the reasons assigned as to why he was not authorized to act was that the law declaring him ex officio a member of the board of commissioners was unconstitutional. If the contest were one of direct inquiry into his right to hold the office, the question as to the constitutionality of the law would be pertinent; but not so where that is not the question. Dyer, the ordinary, has color of office and assumes to act and does act in the capacity of commissioner. His act is valid even if he should only be an officer de facto. Under these conditions it is not necessary to make inquiry into the right by which the ordinary acts as commissioner.

6. Other objections to the levy of the special tax, relied upon as grounds for injunction, were: (a) That the levy was not made until November 1, 1906, after the tax-collector had collected the tax for the year 1906 from many taxpayers and receipted them in full before the levy was made; (b) that a levy of taxes for county purposes for the year 1906 had been made on September 10, which included an item similar to the bridge item now under consideration, and that part thereof had been collected; (c) that no contract had been made to complete the bridges at the time the levy was made; (d) that the levy for the purpose of constructing the bridges would be "an extra levy, extra of the fixed or standing yearly expenses of the county, and said purpose would have to be specially mentioned in said levy;" (e) that the amount of the levy was over 100 per cent. of the per cent. levied by the State for the year 1906, and was not recommended by the grand jury. These grounds of objection are not well founded in law. It was competent on November 1st to make a levy of taxes for the construction of the bridges. *Commissioners* v. *Porter Mfg. Co.*, 103 *Ga.* 613. The fact that some part of the levy of September 10th had been collected before that levy was declared illegal and set aside does not of itself furnish ground for enjoining a subsequent levy of a special tax for the same purpose which was otherwise legal. See, in this connection, *Johnson* v. *Pinson*, 127 *Ga.* 144 (4). The law does not require a contract to be made for the construction of the bridges before the commissioners would be

38

authorized to levy a ·tax ·to provide funds to pay for the same. If it is necessary to levy a tax for the purpose of building bridges, the levy may be made before the contract is made. *Commissioners* v. *Porter Mfg. Co.*, supra. The Political Code, §404, contains nine purposes for which taxes may be levied by the county authorities. Among the purposes mentioned is that of taxation in order to provide funds for the building of public bridges. The item of the levy which is objected to is in the language of the code, and sufficiently specifies the purpose for which the levy was made. No recommendation by the grand jury was necessary for authority to levy that tax. *Sullivan* v. *Yow,* 125 *Ga.* 327. In the case of *Commissioners* v. *Porter Mfg. Co.,* supra, a levy was made "for other lawful purposes." Objection was urged to that levy upon the ground that it failed to specify the particular purpose for which the levy was made. In commenting upon the objection, Mr. Justice Cobb, speaking for this court, said: "While it is possible for the·county authorities to make the levy more full than it is, it is practically impossible for the levy to cover all items which might be legitimately paid out by taxes raised under this clause, and· to fill up this clause in this tax levy with an enumeration of all possible charges other than those enumerated would amount in a great many cases to levies being specifically made for purposes which would never be necessary during the current year. The ·legislature having granted the power in this general way, we can not.say that a levy which was in the exact language of the statute is so indefinite that it should be enjoined." We think that the reasoning in that case is applicable to the point raised by objection to the levy in the case now under review. The commissioners are by law vested with a broad discretion and must be the judges, within reasonable limits, of what is needed for the various purposes for which taxes may be levied. The Political Code, §405, directs: "As soon as the county tax is assessed for the year, it shall be done by order of such [etc.], and entered on their minutes, which must specify the per cent. levied for each specific purpose." But construing this section in connection with §404, where the legislature has undertaken to deal with the subject of special taxation as under nine separate subdivisions designating the special purposes for which county taxes may be levied,

we think it a sufficient specification of the purpose if the levy is substantially in the language of the code.

7. Another objection to the contracts, urged as a ground for injunction, was that the effect of the same would be to create a debt against the county, because there was provision for payment in and during a year succeeding the year in which the contracts were made, there being no money on hand by the county with which to pay in compliance with the contracts. In *Manly Building Co.* v. *Newton*, 114 *Ga.* 246, it was said that the "County authorities may, without being said to create a debt within the meaning of the constitution, contract for the building of a court-house to be paid for out of available funds in the treasury, or with the proceeds of taxes that have been or may lawfully be levied during the year in which the contract is made." In *Carruth* v. *Wagener*, 114 *Ga.* 740, and *Johnson* v. *Pinson*, 126 *Ga.* 121, the tax had been levied when the contract was made, which is also true in the present case. The question, therefore, as to whether a contract can be lawfully made in anticipation of a tax levy is not now before us, and it is not necessary or proper that we should approve or disapprove the ruling in the *Manly Building Company* case in reference to this matter. In other particulars the rulings in that case, so far as pertinent to the case now under consideration, are upon review approved and followed. The tax levy of November 1, 1906, was collectible during the year 1906. The contracts for both bridges were executed in the same year. There was nothing irregular in this. In *Johnson* v. *Pinson*, 126 *Ga.* 123, it was said: "As this tax was to be collected during the year, the county authorities were authorized at any time after this levy, although the tax was uncollected, to make a contract for the erection of the court-house and the jail in any amount they saw proper, which was not in excess of the sum that would be realized from the collection of the tax." Under the pleadings and evidence in the case under review, the amount of the levy was sufficient to cover the cost of both bridges. The mere fact that payment for the bridges was to be made in whole or in part during the year succeeding the execution of the contracts would not characterize the transaction as the creation of a debt. If there was a present necessity for the bridges, and authority to levy the tax, and a lawful levy for that purpose, the collection was inevitable. Under those conditions all reason-

able provision for payment for the bridges would have been made in advance of the making of the contract, and, under the rulings made in the cases cited, no debt would be created. The contracts to build the bridges remain executory until the work is completed. Whenever any sum becomes due to the contractor, the money is available by force of the levy of the tax to make the payment. After a careful examination of all of the assignments of error, we are satisfied with the ruling of the court in refusing to grant the injunction, with but one exception, and affirm the judgment, with direction that the judgment of the court below with respect to the bridge "just below the Seven Islands ford" be modified so as to conform to the directions hereinbefore stated.

*Judgment affirmed, with direction. All the Justices concur.*