## 5762. KNOX *et al. v.* CRUMP *et al.*

1. Under the "drainage act" (Acts of 1911, pp. 108, 132), within 10 days after the report of the viewers or assessors, provided for by the act, has been confirmed, or has been rejected and the proceeding dismissed by the drainage court, any party aggrieved may enter an appeal to the superior court of the county, which appeal shall be "taken and prosecuted as now provided in civil proceedings." The petitioners and the objectors have, under the express provisions of the act, the same right of appeal.

2. On an appeal involving the establishment of a drainage district, under the act of 1911, brought either by those favoring or those opposing a drainage project, the jury in the superior court may determine the broad question as to the feasibility or economic value of the project, and judgment may be entered accordingly in favor of or against the project, and be transmitted to the drainage court; and if the verdict and judgment be favorable thereto, the drainage court shall proceed thereafter as if this had been its original award or judgment.

DECIDED FEBRUARY 3, 1915.

Appeal; from Franklin superior court—Judge Meadow.    March 30, 1914.

*J. H. Skelton, H. H. Chandler, W. R. Little,* for plaintiffs.

*George L. Goode, W. S. McDaniel,* for defendants.

WADE, J.   This case originated under the act of 1911 establishing drainage courts, fixing their powers, etc.   Acts 1911, p. 108, 132.   T. H. Knox and others presented their petition to the drainage court of Franklin county, praying for the creation of a drainage district in the counties of Franklin and Stephens.   It appears from the record that all the necessary preliminary orders were passed, and such other proceedings had, in accordance with the requirements of the act, as to bring the case properly before that court for a final hearing on December 29, 1913.   On that date Mrs. J. W. Crump and a number of others owning lands in the proposed drainage district filed objections to the final report of "the board of viewers," and the court, after considering the report made by the board and the objections thereto, passed an order on December 31, 1913, dismissing the entire proceedings.   From this order of dismissal the petitioners entered their appeal, within the period of 40 days (omitting Sunday), from the drainage court to the superior court of Franklin county; and, upon motion of the defendants, when the case was called in its order in the superior court, the appeal was dismissed.   The petitioners filed their bill of exceptions to the judgment of the superior court, and the sole question for determination is whether or not the superior court erred in refusing to entertain the appeal from the order of the drainage court dismissing the entire drainage proceedings.

The act of 1911, section 16, provides that if at the final hearing objections in writing to the report of the "viewers" are filed by any landowner, it shall be the duty of the court to carefully review the report of the viewers, as well as the objections filed thereto, and make such changes as are necessary to render substantial and equal justice to all the landowners in the district, and "if in the opinion of the court the cost of construction, together with the amount of damages assessed, is not greater than the benefits that will accrue to the land affected, the court shall confirm the report of the viewers.   If, however, the court finds that the cost of construction, together with the damages assessed, is greater than the resulting benefit that will accrue to the lands affected, the court

shall dismiss the proceedings at the cost of the petitioners." Section 17 is as follows: "Any party aggrieved may, within ten days after the confirmation of the assessors' report, appeal to the superior court. Such appeal shall be taken and prosecuted as now provided in civil proceedings. *Provided,* that the right of appeal shall obtain in all cases of dispute as now provided by law, and in accordance with this act."

It appears from the record that the grounds insisted upon by the defendants in error in their motion to dismiss the appeal in the superior court were in substance as follows: (1) that there can be no appeal to the superior court because the proceedings in the drainage court were dismissed; (2) that the judgment of the drainage court was final and conclusive against all the parties plaintiff; (3) that no appeal to the superior court could be had except from a judgment of the drainage court confirming the report of the assessors; (4) that the act of 1911 vests no jurisdiction in the superior court to render a judgment establishing a drainage district as contemplated by that act, and no legal and enforceable judgment could be molded upon a verdict in the superior court in behalf of the petitioners in such a case; (5) that there is no appellate jurisdiction in the superior court to hear and determine the issues raised by the pleadings in the case.

"The technical right of appeal was unknown to the common law, and exists only by statute or constitutional provision." *Davison* v. *Bush,* 8 *Ga. App.* 34, 36 (68 S. E. 495). In *Roser* v. *Marlow, R. M. Charlton,* 543, it was held by Judge Charlton that "an appeal can only be had when it is expressly given, and a certiorari always lies, unless it has been expressly taken away." "An appeal from an inferior court to a superior court for another trial, as an original case, was unknown to the common law. Such appeals are of statutory origin, and the practice and mode of procedure are prescribed by statute." *Robinson* v. *McAlpin,* 130 *Ga.* 489, 490 (61 S. E. 1115). "The constitution provides that the superior court shall have appellate jurisdiction 'in all such cases as may be provided by law.' Civil Code [of 1895], § 5845. In construing a similar provision in reference to appeals of cases in the justice's court, it was held that the provision in the constitution was not self-executing, and therefore did not become operative until legislative action regulating the mode and manner of appeal. *Hendrix* v. *Mason,* 70

*Ga.* 523. The appellate jurisdiction of the superior court must be exercised, and can only be exercised, in such cases as are provided by law." *DeLamar* v. *Dollar,* 128 *Ga.* 57 (3), 66 (57 S. E. 89), s. c. 1 *Ga. App.* 687, 696 (57 S. E. 85). "The constitution declares that 'The right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate.' But the preservation of the right 'inviolate' did not operate to confer a right of trial by jury in all proceedings of whatsoever character, where no·such right had ever existed. In a proceeding to validate bonds, no judgment for money or land is entered against the present complainants or any other citizens or taxpayers; no direct judgment for immediate recovery of money is even entered against the municipality. The proceeding is not one of the class, either in terms or by analogy, in which jury trials have ever existed as matter of right; and it does not fall within the constitutional provision above quoted." *Lippitt* v. *Albany,* 131 *Ga.* 629, 631, 632 (63 S. E. 33).

It is apparent, from these and from numerous other decisions of the Supreme Court, that the determination of the question whether or not the plaintiffs in error were entitled to an appeal to the superior court must rest primarily upon whether or not the statute itself provides for or authorizes such an appeal, since the right to such an appeal is neither guaranteed by the constitution nor provided for under general law relating to like appeals to the superior court. It will be observed that section 17, supra, provides that an appeal to the superior court may be had "within 10 days after the confirmation of the assessors' report," and further declares that the right of appeal "shall obtain in all cases of dispute, *as now provided by law, and in accordance with this act*" (italics ours). A reasonable interpretation must always be given to any act of the legislature where possible, and, bearing this in mind, we can not rationally reach the conclusion that in this act the legislature, while allowing the right of appeal to those resisting the confirmation of a report from drainage assessors, intended to withhold this right from those seeking such confirmation. We may not assume that the legislature would deny to one class what was duly and in terms accorded another, or that any discrimination between different citizens would be intentionally created, unless perhaps for paramount reasons of public policy; and in this instance it can not be main-

tained that it would be against public policy to extend to those attempting to put into effect an act adopted for the public good the same right of appeal to a higher tribunal which is by the express terms of the statute granted to those who interpose objections thereto, prompted by personal considerations alone. Again, if the drainage court is a court from whose finding on the facts, against a particular drainage plan, no appeal can be taken, it might easily be possible that the court, if inimical to the drainage law, would conscientiously, and ofttimes mistakenly, disapprove of every drainage project presented for its consideration, as not being of sufficient prospective value to authorize the necessary cost, and thus nullify the act entirely.

Section 17 provides that "any party aggrieved may, within ten days after the confirmation of the assessors' report, appeal to the superior court." That section does not say that any party aggrieved *by* confirmation of the report, but any party aggrieved—presumably in *any* way, either by confirmation of the report or by refusal of the drainage court to confirm the report. Construing section 17 altogether, it is clear that the legislature intended to confer upon "any party aggrieved" the right of appeal to the superior court, since the last clause of that section declares explicitly "that the right of appeal shall obtain in all cases of dispute, as now provided by law, and in accordance with this act." This broad and sweeping provision must be construed to literally cover *"all* cases of dispute," or else it would amount to a mere idle statement and would be surplusage only.

It is true this clause provides that the right of appeal shall obtain "as now provided by law, and in accordance with this act," and at the time the act was passed there was no general provision of law guaranteeing or providing for such a right of appeal, so that the right of appeal referred to must exist "in accordance with this act," or not at all. Taking the section as a whole, it appears to us that the evident intention of the legislature was to allow the right of appeal in all cases of dispute to any party aggrieved, "within 10 days after the confirmation of the assessors' report," which we construe to mean within 10 days from the time the court rendered judgment upon the question of confirming the assessors' report— irrespective of whether that judgment was for or against confirmation; and we further conclude that the language in the last clause,—

"as now provided by law, and in accordance with this act,"—means that the right of appeal shall be *exercised* as provided under the existing general law, except in so far as that law may be modified by this act,—for instance the right of appeal to be exercised within 10 days instead of within 4 days. Civil Code, §§ 5000-1.

It is urged with much force in behalf of the defendants in error that inasmuch as section 16 of the act provides that in the event "the court finds that the cost of construction, together with the damages assessed, is greater than the resulting benefit that will accrue to the lands affected, the court shall dismiss the proceedings at the cost of the petitioners," it was the intention of the legislature to make the action of the drainage court, in refusing to confirm the report of the "viewers" and in dismissing the petition for the establishment of a drainage district, absolutely final and conclusive. The act provides that the clerk of the superior court, together with the board of commissioners of roads and revenues, or if there be no such board, with the ordinary of any county of the State of Georgia, shall constitute the drainage court. The original act of 1911 further provided (section 25) that where any public ditch, drain, or public watercourse established under the provisions thereof, crosses a public highway, the actual cost of constructing the same across the highway, *"or removing old bridges or building new ones,"* should be paid from the fund of the drainage district; but by the amendment of 1913 (Acts 1913, pp. 85, 86, § 3) it is provided that the cost of building all new bridges under the act of 1911 "shall be borne and paid for by the county." So it appears that when the drainage board, under the law as amended, has under advisement the question of whether the benefits from a particular drainage project will exceed the cost thereof, the court (composed partly of the county officers having in charge its fiscal affairs) must in many cases consider the advisability of building at the cost of the county new bridges which may or may not be of general advantage to the citizens of the county. It might happen that the cost of certain new bridges, made necessary by the adoption of some drainage project, would far exceed the gross value of all the lands to be benefited by new canals, ditches, etc.; and in such a case the county authorities constituting the drainage court, and especially the particular members of that court upon whom devolved the management

of the revenues of the county, might well hesitate to approve such a project, and might dismiss the petition for this reason.

Generally speaking, the county commissioners (or the ordinary, where there are no such commissioners) have a very broad discretion in determining whether or not they will build bridges, erect court-houses, or construct other public improvements; and this discretion, as well as their discretion in levying taxes for any such purpose, will not be disturbed by the superior court, unless plainly and manifestly abused, notwithstanding that court has express authority to review the levy of taxes for such purposes by mandamus or injunction, as the nature of the case may require, as provided in section 505 of the Civil Code. *Gaines* v. *Dyer,* 128 *Ga.* 585 (58 S. E. 175). In reference to the erection of public buildings in the various counties of this State, the Supreme Court said, in the case of *Commissioners* v. *Porter Mfg. Co.,* 103 *Ga.* 613, 617 (30 S. E. 547): "The discretion vested in the county authorities must be from the nature of the case a broad one, and therefore the reviewing power of the judge of the superior court must be exercised with caution, and no interference had unless it is clear and manifest that the county authorities are abusing the discretion vested in them by law." Again, in *Anderson* v. *Newton,* 123 *Ga.* 512, 521 (51 S. E. 508), the court said: "Equally clear is it that the court correctly held that the board of county commissioners was vested with discretionary power with respect to deciding whether or not the erection of a new court-house was a present and urgent public necessity, and, if so, upon what site it should be built."

So, it would seem, by analogy of reasoning, that the question whether or not a drainage project which carried with it the necessity for new bridges to be erected in the drainage district at the expense of the county should be approved and confirmed, or altogether rejected and dismissed, by the drainage court, composed of county officials, would be a county matter coming perhaps within their discretion, and that such discretion would not be subject to review unless palpably abused. We think, undoubtedly, this would be correct if it were not for the express declaration in the act of 1911, providing for an appeal to the superior court, whereby the entire issue as to the comparative cost and benefit of a drainage plan, including all necessary bridges, etc., can be settled in a de novo investigation.

Giving section 17 the construction we have given it, another connected question remains to be determined. Section 16 provides that if the court finds that the cost of construction, etc., is greater than the resulting benefits which will accrue to the lands affected, the court shall "'dismiss" the proceedings, and the query naturally suggests itself, how may a case which has been dismissed and therefore entirely thrown out of court be appealed to another tribunal? In other words, what is there to appeal from, if, in consequence of the judgment dismissing the case, nothing remains in court? It has been many times decided, however, by the Supreme Court that where a decision in a justice's court is to the effect that the plaintiff's evidence is insufficient to uphold the action, notwithstanding the judgment be one dismissing the suit, it is in fact an adjudication upon the merits as to the matter of fact involved in the trial, and the plaintiff is entitled nevertheless to an appeal to a jury. See *Savannah, Florida & Western Ry. Co.* v. *McMillan,* 95 *Ga.* 504 (22 S. E. 273).

It is true that in *Toole* v. *Edmondson,* 104 *Ga.* 776, 783 (31 S. E. 25), Justice Cobb said: "When the effect of the ruling is to dismiss the case or entire proceeding, the exclusive remedy is certiorari, without regard to the amount involved;" but as to that case the Supreme Court, in *Hollis* v. *Doster,* 113 *Ga.* 115, 118 (38 S. E. 308), said: "In *Toole* v. *Edmondson,* 104 *Ga.* 783, Mr. Justice Cobb laid down certain 'rules to determine whether certiorari or appeal is the proper remedy.' In formulating these rules, he used several expressions the substance of which was that there could be no appeal where the effect of the decision appealed from was to dismiss the case. These expressions must, in the light of the ruling in *McMillan's* case and the principle which underlies it, be understood as conveying the idea that an appeal will not lie where the case is, without trial, disposed of by a judgment of dismissal based *upon a view of law or practice entertained by the trial judge or justice* [italics ours], the logical result of which, whether the view itself be correct or incorrect, is to take the case out of court by the dismissal route. Dismissal by the court before or without trial leaves no case to be dealt with by appeal, but dismissal after trial, whether as the result of evidence or for lack of evidence, will not cut off or impair the right of appeal." Again, the court says in the same case: "When a case involving a disputed issue of fact is

tried by a justice of the peace in a justice's court, and he decides that under the evidence submitted the plaintiff is not entitled to recover, he should render a judgment for the defendant; but if, instead of so doing, he dismisses the action, the plaintiff may nevertheless enter an appeal, for the decision, notwithstanding the form of the judgment, is in substance an adjudication on the merits as to the matter of fact in controversy at the trial." In the same case the whole subject is very fully and lucidly discussed, and in *Neal* v. *Fox,* 114 *Ga.* 164 (39 S. E. 860), the ruling in that case is referred to and approved.

From the very nature of the case it is apparent that before the drainage court could determine whether the particular drainage project would be beneficial or not, it was necessary for that court to consider the particular evidence affecting this question which the law itself authorizes the court to receive; and it is made the express duty of the court, before confirming the report of the assessors or dismissing the proceeding at the cost of the petitioners, "to carefully review the report of the viewers and the objections filed thereto;" so that a dismissal under such circumstances is, after all, an adjudication on the merits of the question before the court for solution; and hence, under the rules suggested in the various cases above referred to relating to dismissals in justice's courts where the evidence was considered, the judgment of the drainage court in dismissing such a petition is necessarily an adjudication on the merits, and is therefore subject to appeal. The only embarrassment here arises from the use of the word "dismissal" in the act itself, but when we consider section 17, providing, as we hold, for the right of appeal in all cases of dispute, and expressly authorizing "any party aggrieved to enter his appeal to the superior court," we are constrained to the view that the "dismissal" contemplated and authorized in section 16 is, after all, only nominally a dismissal, and in fact and in law is a judgment on the merits.

We see no reason why a jury, composed of citizens who may be assumed to have at heart the interest of their home county, who, under every view of section 17 of the act of 1911, would be authorized to pass upon the contentions of one objecting to the confirmation of a drainage report affecting his interest, could not equally well be trusted to determine an appeal brought by those seeking to establish such a district; and it is clear to us that the intention of

the legislature was to accord to all parties equal rights, and we therefore hold that the trial judge erred in dismissing the appeal.

One of the objections urged by the defendants was that the superior court was not vested with appellate jurisdiction to determine the issues raised by the pleadings, or to render a judgment establishing such a drainage district as is contemplated by the act of 1911, and no legal and enforceable judgment could be molded upon a verdict in behalf of petitioners seeking to establish the drainage district. The superior court, on appeal, would take up the only question passed upon by the drainage court and the only question to be determined in the de novo investigation in the superior court, to wit, the feasibility of the drainage scheme, its economic value, etc.; and if a jury found in favor of the project and against the judgment of the drainage board (where the petition had been dismissed by that board), a judgment might be there entered up accordingly, and, upon the transmission of this judgment to the drainage court, that court could thereupon proceed to appoint a board of drainage commissioners, and do such other acts as it would have been authorized to do had its original decision been in favor of confirmation. So also, if the drainage court confirmed any particular drainage project, any party aggrieved by the confirmation might take the judgment of the drainage court to the superior court by appeal, and upon a verdict of a jury against the project, judgment might be entered in the superior court and transmitted to the drainage court, which could then proceed to collect, by proper proceedings, any costs, etc., outstanding.

*Judgment reversed. Broyles, J., not presiding.*